## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**<br>600 Pennsylvania Avenue, Northwest<br>Washington, District of Columbia  20580<br>          Plaintiff,<br><br>    v.<br><br>**AMERIDEBT, INC.,**<br>12800 Middlebrook Road<br>Germantown, Maryland 20874<br>Montgomery County,<br><br>**DEBTWORKS, INC.,**<br>12850 Middlebrook Road<br>Germantown, Maryland 20874<br>Montgomery County,<br><br>**ANDRIS PUKKE,**<br>11509 Dahlia Terrace<br>Potomac, Maryland 20854-1174<br>Montgomery County<br>         Defendants, and<br><br>**PAMELA PUKKE a/k/a Pamela Shuster**<br>11509 Dahlia Terrace<br>Potomac, Maryland 20854-1174<br>Montgomery County<br>         Relief Defendant. | **Civil Action No.:**<br><br>Complaint for Injunctive and<br>Other Equitable Relief |

## COMPLAINT FOR INJUNCTIVE
## AND OTHER EQUITABLE RELIEF

The Federal Trade Commission alleges:

1.      This is an action under Sections 5(a) and 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a) and 53(b), and Sections 503 and 505(a)(7) of the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. §§ 6803 and 6805(a)(7), to secure permanent injunctive relief and other

equitable relief, including rescission, reformation, restitution, and disgorgement, against Defendants for

engaging in unfair or deceptive acts or practices in or affecting commerce in violation of Section 5(a) of

the FTC Act, as amended, 15 U.S.C. § 45(a), and failure to provide consumers with the disclosures

required by Subtitle A of Title V of the GLB Act, 15 U.S.C. §§ 6801 through 6809, and the FTC's

Privacy of Consumer Financial Information Rule ("Privacy Rule"), 16 C.F.R. Part 313.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C.

§§ 45(a), 53(b), 6805(a)(7), and 28 U.S.C. §§ 1331, 1337(a) and 1345.

3.      Venue is proper in the United States District Court for the District of Maryland

under 28 U.S.C. §§ 1391(b) and (c), and 15 U.S.C. § 53(b).

## PARTIES

4.      Plaintiff, the Federal Trade Commission, is an independent agency of the United

States Government created and given statutory authority and responsibility by the FTC Act, as amended,

15 U.S.C. §§ 41-58.  The Commission is charged with enforcing Section 5(a) of the FTC Act, 15 U.S.C.

§ 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce, and Title V of the

GLB Act, 15 U.S.C. §§ 6803 and 6805(a)(7).   The Commission is authorized by Section 13(b) of the

FTC Act, 15 U.S.C. § 53(b), to initiate federal district court proceedings to enjoin violations of the FTC

Act and to secure such equitable relief as may be appropriate in each case, including, but not limited to,

restitution and disgorgement.

5.      AmeriDebt, Inc. ("AmeriDebt") is a Maryland non-stock corporation with its

principal place of business at 12800 Middlebrook Road, Germantown, Maryland.  AmeriDebt has also

2

conducted business at 12850 Middlebrook Road, Suite 400, Germantown, Maryland. AmeriDebt

transacts business in this District. Although AmeriDebt has obtained 501(c)(3) status from the Internal

Revenue Service, it operates for the economic benefit of for-profit companies and/or private persons and

is therefore a "corporation" within the meaning of Sections 4 and 5(a) of the FTC Act, 15 U.S.C. §§ 44

and 45(a).

6.      DebtWorks, Inc. ("DebtWorks") is a Maryland corporation with its principal

place of business at 12850 Middlebrook Road, Suite 210, Germantown, Maryland. Previously,

DebtWorks maintained its principal place of business at 12850 Middlebrook Road, Suite 400,

Germantown, Maryland. DebtWorks is a for-profit company that transacts business in this District.

7.      Andris Pukke ("Pukke") is DebtWorks' founder and sole shareholder. In

addition, Pukke was chairman and chief executive officer of DebtWorks from July 1999 to May 2002

and its president from July 1999 to January 2002. Pukke also assisted in the founding of AmeriDebt.

Individually or in concert with others, he directs, controls, formulates, or participates in the acts or

practices alleged in this complaint. He resides, transacts or has transacted business in this District.

8.      Defendants AmeriDebt, DebtWorks, and Pukke operate together as a common enterprise.

9.      Relief Defendant Pamela Pukke (also known as Pamela Shuster) was one of the

original founders of AmeriDebt and served as a director, vice president, and treasurer from at least

March 1997 until October 1999. She also signed at least one document as President of AmeriDebt in

December 2000. Individually or jointly with her spouse, Andris Pukke, she has received funds and other

property that were derived unlawfully from payments by consumers as a consequence of the acts and

practices complained of herein, and she does not have a legitimate claim to those funds. She resides in

3

this District.

## DEFENDANTS' BUSINESS PRACTICES

10.     AmeriDebt styles itself as a non-profit credit counseling organization dedicated to assisting consumers having difficulties with their personal finances.  Its clients include over-extended consumers with excessive debt who are having difficulties making their required monthly payments on time.

11.     The credit counseling industry has been in existence for over 50 years.  Historically, credit counseling organizations have been non-profit companies offering consumers with financial difficulties advice from credit counselors.  This advice may include helping consumers develop a budget and providing advice on reducing expenses.

12.     When appropriate for a particular consumer, a credit counseling organization may also offer to help the consumer restructure his existing debt payments through a debt management plan ("DMP").  DMPs allow consumers to pay the credit counseling organization one consolidated monthly payment for all of their unsecured debts that are included in the plan.  After the monthly payment is collected, the organization disburses payments to the creditors on the plan.  Creditors often offer reduced interest rates and waiver of certain fees to consumers who pay through a DMP.  Many of these non-profit organizations charge small fees, such as $19 to enroll plus $12 for monthly maintenance, or no fee at all.

13.     Although AmeriDebt's website has stated that Defendants are "the industry leader in credit counseling and debt management," and that they will "teach you how to handle credit in the future" (Exhibits 1 and 2), Defendants do not provide advice about consumers' finances or teach them

4

how to handle debt in the future.  Instead, they enroll all of their clients in DMPs, and their dealings with consumers consist of describing the DMPs and enrolling consumers on the plans.  Defendants solicit prospective clients for the DMPs through television, radio, print, and internet advertisements.  These advertisements make various claims about the services that Defendants provide to consumers and invite consumers to call AmeriDebt for a free consultation.  In 2001, Defendants spent more than $11 million on advertisements.

14.     Defendants employ customer service representatives, whom Defendants call "counselors," to sell DMPs to consumers.  Defendants train these representatives to market the DMPs by making a variety of statements about the services offered and terms of enrollment.  The representatives receive bonuses based on the amount of revenue they generate – that is, the amount of fees they collect from consumers.

15.     Defendants represent, both in advertisements and orally, that they do not charge up-front fees for enrolling in the DMPs.  For example, in a television advertisement, Defendants state, "We're a non-profit organization offering free consultations and solutions to consumers seeking to eliminate their debt." (Exhibit 3).  In response to the question, "How much will it cost me to be on the Debt Management Program," AmeriDebt's website has stated, "Due to the fact that AmeriDebt is a non-profit organization, we do not charge any advance fees for our service.  We do request that clients make a monthly contribution to our organization to cover the costs involved in handling the accounts on a monthly basis." (Exhibit 4).

16.     In the initial telephone call with the consumer, Defendants' representative obtains the consumer's debt information, determines the estimated amount of the consumer's monthly payment

under the DMP, tells the consumer when he will receive the contract (usually the same day via fax or internet), and presses the consumer to return the signed contract immediately.

17.   After Defendants receive the signed contract, Defendants' representative contacts the consumer, tells him that he must make the first payment to be formally enrolled in the program, and urges him to make the payment quickly.  In most instances, Defendants keep the consumer's first payment as the up-front fee for participating in the DMP, and disburse none of it to creditors.

18.   Although Defendants refer to the up-front payments in their form contracts, they call the payments "contributions" and state that they are voluntary.  These disclosures, which come late in the transaction, are inconsistent with the statements Defendants have already made to consumers that there are no up-front fees to obtain Defendants' services.  Moreover, Defendants' description of the fees as "voluntary" leads consumers to believe that they have a choice about whether and when to make these contributions, not that Defendants will automatically keep consumers' first payments.

19.   In addition to charging up-front fees, Defendants charge consumers monthly fees in order to participate in the DMPs.  Monthly fees are typically $7 for each account included in the DMP, with a minimum total monthly fee of  $20 and a maximum fee of $70 per month for the life of the plan (typically, three to five years).  Although the fees generate substantial revenues for affiliated for-profit entities and individuals, Defendants repeatedly represent to consumers that AmeriDebt is a non-profit entity.

20.   Once AmeriDebt has enrolled the consumer in the DMP, AmeriDebt sends the consumer's file to its servicing company.  From September 1999 until December 31, 2002, DebtWorks was the servicing company for all of Defendants' DMP accounts.  DebtWorks has earned substantial

fees from these services.  For example, AmeriDebt paid DebtWorks over $13 million in 2000 and $27 million in 2001 for servicing the DMP accounts.

21.    As AmeriDebt's servicing company, DebtWorks handled all communications with creditors and consumers, including setting up repayment terms with creditors, fielding incoming calls from consumers, making outgoing calls to consumers and creditors, updating consumers' information, collecting payments from consumers, and disbursing payments to creditors.

22.    Defendants conduct the business practices described in this complaint through an interrelated maze of companies that have had common ownership, officers, and business functions.  For example, Defendant Pukke was instrumental in the founding of AmeriDebt, currently owns DebtWorks, and controlled both companies for a period of time.  Further, other individuals have held key leadership positions for more than one of the corporate Defendants.  For example, DebtWorks' former chief operating officer was also a manager and director of AmeriDebt.  In addition, after AmeriDebt enrolled a consumer in a DMP, DebtWorks performed the remainder of the operations associated with the DMP, and DebtWorks employees held themselves out to be employees of AmeriDebt.

## FEDERAL TRADE COMMISSION ACT VIOLATIONS

### Count I: Misrepresentation of Up-Front Fees

23.    Plaintiff incorporates by reference all of the foregoing paragraphs.

24.    In numerous instances, through their advertisements, contracts, and employees Defendants have represented, expressly or by implication, that they charge no up-front fees for enrolling in the DMPs.

25.    In truth and in fact, Defendants do charge up-front fees for enrolling in the DMPs. Therefore, Defendants' representations were, and are, false or misleading.

## Count II: Deceptive Omission That Defendants Retain All or a Substantial Portion of a Consumer's First Payment as a Fee

26.     Plaintiff incorporates by reference all the foregoing paragraphs.

27.     Defendants, through their advertisements, contracts, and employees, have represented, expressly or by implication, that consumers' payments will be disbursed to creditors.  Defendants have failed to disclose that Defendants keep all or a substantial portion of a consumer's first payment as a fee. This fact would be material to consumers.   Defendants' failure to disclose this fact, in light of the representations made, was, and is, a deceptive practice.

## Count III: Misrepresentation That Defendants Teach Consumers How to Handle Credit and Finances in the Future

28.     Plaintiff incorporates by reference all the foregoing paragraphs.

29.     Defendants, through their advertisements, contracts, and employees, have represented, expressly or by implication, that they teach consumers how to handle their credit and finances in the future.

30.     In truth and in fact, Defendants do not teach consumers how to handle their credit and finances in the future.  Therefore, Defendants' representations were, and are, false or misleading.

## Count IV: Misrepresentation That AmeriDebt is a Non-Profit Entity

31.     Plaintiff incorporates by reference all of the foregoing paragraphs.

32.     Defendants, through their advertisements, contracts, and employees, have represented, expressly or by implication, that AmeriDebt is a non-profit entity.

33.     In truth and in fact, AmeriDebt is not a non-profit entity.  Therefore, Defendants' representations were, and are, false or misleading.

## GRAMM-LEACH-BLILEY ACT VIOLATION

### Count V: Failure to Provide Required Disclosures

34.     Plaintiff incorporates by reference all of the foregoing paragraphs.

35.     AmeriDebt is a financial institution for purposes of the GLB Act and the Privacy Rule. 15 U.S.C. 6809(3); 16 C.F.R. Part 313.3(k).  Pursuant to the GLB Act and the Privacy Rule, AmeriDebt was required to provide, on or before July 1, 2001, notices to their customers regarding the collection, disclosure, and protection of nonpublic personal information about its customers.

36.     AmeriDebt did not send these required notices to its existing customers until July 2002.

37.     AmeriDebt's failure to provide notices to its existing customers on or before July 1, 2001 constitutes a violation of Section 503 of the GLB Act, 15 U.S.C. § 6803, and the Privacy Rule, 16 C.F.R. Part 313.

## CONSUMER INJURY

38.     Consumers have suffered, and will continue to suffer, substantial injury as a result of Defendants' violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 503 of the GLB Act, 15 U.S.C. § 6803, and the Privacy Rule, 16 C.F.R. Part 313, as set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court, as authorized in Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and pursuant to its own equitable powers:

1.     Enter judgment against Defendants and in favor of plaintiff for each violation charged in the Complaint;

2.     Permanently enjoin and restrain Defendants from violating the FTC Act as alleged herein;

3.      Permanently enjoin and restrain Defendant AmeriDebt from violating Section 503 of the GLB Act or the Privacy Rule as alleged herein;

4.      Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including, but not limited to, the recission of contracts, the refund of monies, and the disgorgement of ill-gotten monies;

5.      Award such relief against Relief Defendant Pamela Pukke that the Court deems necessary to protect and return funds and other property to which Pamela Pukke has no legitimate claim that were derived from Defendants' violations of Section 5(a) of the FTC Act, including an order to disgorge all ill-gotten gains or proceeds that she has received as a result of the acts and practices complained of herein, and an order imposing a constructive trust upon such gains or proceeds; and

///

///

///

///

///

///

///

///

///

///

///

6.     Award Plaintiff such other and additional equitable relief as the Court may determine to be just and proper.

Dated: November 19 2003

Respectfully Submitted,

FEDERAL TRADE COMMISSION
WILLIAM E. KOVACIC
General Counsel

JEANNE-MARIE S. BURKE
MAIYSHA R. BRANCH
Federal Trade Commission
600 Pennsylvania Avenue, NW
Room NJ-3158
Washington, DC 20580
(202) 326-2874 (telephone)
(202) 326-3768 (facsimile)

Local Counsel
ROBERT S. KAYE
MD.D.CT. # 09560
Federal Trade Commission
600 Pennsylvania Avenue, NW
Room H-238
Washington, DC 20580
(202) 326-2215 (telephone)
(202) 326-3395 (facsimile)