## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil Action No. PJM 03-3317 |
| | * | |
| AMERIDEBT, INC. *et al.,* | * | |
| | * | |
| Defendants | * | |
| | * | |

## OPINION

### I.

The Federal Trade Commission (FTC) has sued AmeriDebt, Inc., DebtWorks, Inc. and Andris Pukke for misrepresentations and deceptive omissions under the Federal Trade Commission Act.  It has also sued AmeriDebt for violations of the disclosure requirements under the Gramm-Leach-Bliley Act.  The FTC alleges that Defendants, operating under the guise of a non-profit credit counseling service, have defrauded consumers with debt problems by offering to fashion debt repayment plans for them, then deducting for their own benefit payments the consumers made under the plans without disclosing those deductions to the consumers.  The FTC has also sued Pamela Pukke, as Relief Defendant, to recover such proceeds of these transactions as have been received by her husband, Andris Pukke.

AmeriDebt has filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, and a Motion to Dismiss Count V for Failure to State a Claim Upon Which Relief Can Be Granted.  DebtWorks has filed a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted, which

Andris Pukke has adopted by reference.  Pamela Pukke has filed a Motion to Dismiss for Lack of

Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted, incorporating by

reference the motions of all the Defendants and adding certain arguments applicable to her alone.  The

Court held oral argument on these motions and took them under advisement.  Having considered the

pleadings and the arguments of counsel, the Court **DENIES** both of AmeriDebt's Motions.  The

Motions to Dismiss of DebtWorks and Andris Pukke are **GRANTED** in **PART** and **DENIED** in

**PART**, **GRANTED WITHOUT PREJUDICE** insofar as they seek dismissal of Count V as to these

two Defendants, **DENIED** in all other respects.  Pamela Pukke's Motion to Dismiss is also

**GRANTED** in **PART** and **DENIED** in **PART**, **GRANTED WITHOUT PREJUDICE** insofar as it

seeks dismissal of Count V as to her, **DENIED** in all other respects

II.

A. *Factual Background*

AmeriDebt is a privately held Maryland corporation incorporated as a nonprofit corporation

under § 501(c)(3) of the Internal Revenue Code.  Operating as a consumer credit agency (CCA), it

ostensibly provides credit counseling and educational services to consumers with debt problems.

Credit counseling takes various forms, including finding alternative funding sources for the consumer,

giving him guidance on how to handle finances in the future, placing him on a Debt Management Plan

(DMP), and, finally, assisting him in filing for bankruptcy.  Restructuring debt through a DMP allows a

consumer to consolidate unsecured debt, lower his interest rates and monthly payments, obtain re-aging

of his debts, and/or curtail collection calls, penalties and over-limit fees.  Typically, under a DMP a

consumer signs a contract agreeing to make monthly payments to AmeriDebt, which then makes

arrangements with the consumer's end-creditors and distributes payments to them.

AmeriDebt was incorporated in December 1996 by Pamela Pukke, Andris Pukke's wife.[1] Initially, AmeriDebt's counselors were required to review applications, input data, implement and maintain payment processing and accounting, negotiate with creditors, and interface with consumers through call-center operations.   However, less than three years after its organization, AmeriDebt purportedly found these credit counseling services too time- and labor-intensive, in consequence of which Andris Pukke incorporated and became the sole shareholder of DebtWorks, a for-profit company.

DebtWorks' raison d'etre was to provide CCA clients with administrative services. Accordingly, DebtWorks has provided various "back-office" account management functions for AmeriDebt, including data entry, payment processing and tracking, and accounting.   After a consumer is enrolled in DMPs, DebtWorks handles all communications with the consumer and the consumer's creditors, including setting up repayment terms, fielding incoming calls from the consumer, making outgoing calls to creditors, updating the consumer's information, collecting payments from the consumer and disbursing payments to creditors.   Although historically AmeriDebt and other non-profit CCAs performed these payment and accounting processes in-house, DebtWorks took as its premise that the CCAs were inefficient in performing these functions and that this impeded their ability to focus on their core mission of counseling and educating consumers.

The FTC's Complaint alleges that AmeriDebt, DebtWorks and Andris Pukke have used deceptive practices to generate profits for themselves, to the detriment of consumers who can least afford it.   Pukke, in particular, is alleged to have controlled and participated in the deceptive practices

---

[1]      Although Andris Pukke has not formally held any position in AmeriDebt, the FTC alleges that he assisted in its founding and at all relevant times has controlled and participated in its activities.

of the enterprises.  The FTC argues that, unlike traditional non-profit credit counselors, AmeriDebt in recent years has essentially limited itself to one service: developing revenue-generating DMPs.  Its counselors have not, despite Defendants' claims to the contrary, given financial advice or taught consumers how to handle debt; instead their sole objective has been to sell DMPs to consumers in order to obtain bonuses for high DMP enrollment rates.  Moreover, AmeriDebt has allegedly charged fees to consumers for its purported non-profit services, which the FTC argues have been unreasonably high in comparison with other truly non-profit agencies.[2]  While the FTC concedes that AmeriDebt gives some notice that it will receive these payments, it contends that this notice is given in contracts produced long after a customer has agreed to enroll in a DMP, and, in addition, refers to the payments as voluntary "contributions" despite the fact that the consumer's entire first payment is automatically deducted at the outset.  AmeriDebt allegedly funnels the fees paid by consumers to its for-profit affiliate DebtWorks.  In 2000, AmeriDebt paid DebtWorks over $13 million; in 2001, $27 million; and in 2002, $35 million.  As DebtWorks' sole shareholder, Andris Pukke ultimately received the profits generated by these fees.[3]

## B.  *Statutory and Regulatory Background*

1.  Federal Trade Commission Act

---

[2]

According to the FTC, in the typical DMP, AmeriDebt retains the consumer's entire first payment as an up-front fee, then continues to charge a monthly fee, with a minimum monthly payment of $20 and a maximum monthly payment of $70 for the life of the plan (typically 36 to 60 months).  In contrast, many non-profits charge $19 to enroll plus $12 per month thereafter, or charge no fee at all.

[3]

At some point in 2003 Pukke sold DebtWorks to Ballenger Holdings, a holding company owned by DebtWorks' former officers.  The business now operates under the name "the Ballenger Group," and continues to service AmeriDebt's DMPs.  To resolve any potential claims the FTC might have against them, Ballenger Holdings and the Ballenger Group entered into a consent decree with the FTC, agreeing to a permanent injunction and the payment of $750,000.00, which the Court approved on December 3, 2003.  *See FTC v. Ballenger Group*, No. 03-3318 (D. Md., filed Nov. 19, 2003).  Ballenger Holdings and the Ballenger Group are not defendants in the present case.

The FTC, an independent agency of the United States Government, was created by the Federal Trade Commission Act (FTC Act), as amended, 15 U.S.C. §§ 41-58.  It is charged with enforcing Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which, *inter alia*, prohibits "unfair or deceptive acts or practices in or affecting commerce," and Title V of the Gramm-Leach-Bliley Act (GLBA), 15 U.S.C. § 6801(a) *et seq.*, which requires financial institutions to "respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information."[4]  The Commission is authorized by Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), to initiate federal district court proceedings to enjoin violations of the Act and to secure such equitable relief as may be appropriate in each case, including, but not limited to, restitution and disgorgement.

Among the entities the FTC may seek to prohibit from using "unfair or deceptive acts or practices in or affecting commerce" are "corporations," 15 U.S.C. § 45(a)(2), defined in  Section 4 of the FTC Act "to include any company . . . which is organized to carry on business for its own profit or that of its members, and [which] has shares of capital or capital stock or certificates of interest . . . ." 15 U.S.C. § 44.[5]  The FTC contends that AmeriDebt, in tandem with the Defendants, is a *de facto* corporation subject to the Act.

2.      Gramm-Leach-Blilely Act

---

[4]

        The FTC is empowered to enforce the GLBA by 15 U.S.C. § 6805(a)(7).

[5]

        The full definition of "corporation" in Section 4 is as follows:
"Corporation" shall be deemed to include any company, trust, so-called Massachusetts trust, or association, incorporated or unincorporated, which is organized to carry on business for its own profit or that of its members, and has shares of capital or capital stock or certificates of interest, and any company, trust, so-called Massachusetts trust, or association, incorporated or unincorporated, without shares of capital or capital stock or certificates of interest, except partnerships, which is organized to carry on business for its own profit or that of its members.
15 U.S.C. § 44.

In addition, according to the allegations of Count V of the Complaint, AmeriDebt is a "financial institution," covered by the Gramm-Leach-Blilely Act (GLBA), 15 U.S.C. § 6801 *et seq.*, and as such is required to provide notices to customers describing its information collection and sharing practices regarding personally identifiable financial information of the customers.  15 U.S.C. § 6803.  Under the GLBA, consumers in certain cases have the right to opt out of, or refuse the sharing of, their information.  15 U.S.C. § 6802.  AmeriDebt denies that it is a "financial institution" subject to the Act.

The GLBA does not exhaustively list the types of "financial institutions" subject to its coverage. Congress broadly defined the term under the GLBA to apply to any institution that engages in "financial activities" as that term is defined by section 4(k) of the Bank Holding Company Act of 1956 (BHCA), 15 U.S.C. § 6809(3)(A).  Section 4(k)(4) of the BHCA lists activities that "shall be considered to be financial in nature," including "[p]roviding financial, investment, or economic advisory services . . . ." 12 U.S.C. § 1843(k)(4)(C).  Section 4(k)(4)(F) also deems "financial in nature" activities that the Federal Reserve Board (FRB) determines by order or regulation "to be so closely related to banking or managing or controlling banks as to be a proper incident thereto . . . ." 12 U.S.C. §1843(k)(4)(F).  The FRB's "Regulation Y" implements this provision by listing activities "closely related to banking," including, *inter alia*, "brokering, or servicing loans or other extensions of credit," activity in connection therewith, and "[f]inancial and investment advisory activities."  12 C.F.R. §§ 225.28(a), (b)(1), (b)(2) & (b)(6) (1999).

The GLBA authorizes the FTC and other federal agencies to issue "such regulations as may be necessary to carry out the purposes of" the GLBA's privacy's provisions.  15 U.S.C. § 6804(a)(1).[6]

---

[6] As required by the GLBA, the agencies coordinated their rulemaking efforts and issued regulations that were "consistent and comparable" with those of the other agencies.  15 U.S.C. § 6804(a)(2).

To that end, on May 24, 2000, the FTC issued a final rule, denominated Privacy of Consumer Financial Information (the Rule), 16 C.F.R. pt. 313, which describes the content, form, timing and delivery of privacy and opt-out notices, the conditions under which financial institutions may disclose nonpublic personal information to nonaffiliated third parties, and the conditions under which the third parties may redisclose it and use it. *See* 16 C.F.R. §§ 313.1 - 313.18 (2003). The Rule controls the dissemination of "[p]ersonally identifiable financial information," defined to include essentially all information obtained by a financial institution in connection with providing a financial product or service to an individual primarily for personal, family or household purposes. *See* 16 C.F.R. § 313.3(o)(1). *See Trans Union LLC v. FTC*, 295 F.3d 42, 50-1 (D.C. Cir. 2002).

The Preamble to the Rule states that the term "financial institution" is defined "very broadly" under the GLBA and includes several entities not traditionally recognized as financial institutions. *See* 65 Fed. Reg. 33646, 33647 & 33658 (May 24, 2000). The Rule repeats the GLBA definition of "financial institution" and adds that "[a]n institution that is significantly engaged in financial activities is a financial institution." 16 C.F.R. § 313.3(k)(1). The Preamble further states that, "[t]he institutions covered by the rule ... are defined by reference to the comprehensive list of activities found at section 4(k)(4) of the [BHCA]," including all activities listed in the Board regulations referenced in section 4(k)(4), and already in effect on the effective date of the GLBA. 65 Fed. Reg. 33646, 33654-55 & n.24. The Rule then cites examples of the types of entities that are significantly engaged in financial activities but expressly indicates that the examples are not exhaustive. *See* 16 C.F.R. §§ 313.1(b) & 313.2.[7] Both the proposed and final Rule explicitly include a "credit counseling service" as an example

---

[7]

The regulation, in pertinent part, reads:
More specifically, those entities include, *but are not limited to*, mortgage lenders, "pay day" lenders, finance companies, mortgage brokers, account servicers, check cashers, wire transferors, travel agencies operated in

of a financial institution.[8]   *Id.* at § 313.3(k)(2)(xii).  "Credit counseling" is also cited as an example of

activities subject to the GLBA in other respects, such as the Rule's requirement that financial institutions

circulate initial privacy notices to customers. 16 C.F.R. § 313.4(c)(3)(i)(D). [9]

III.

As a threshold matter, the Court considers AmeriDebt's recent bankruptcy filing and its claim

of entitlement to an automatic stay of this proceeding pursuant to the Bankruptcy Code, 11 U.S.C. §

362(a).[10]   The FTC disputes AmeriDebt's entitlement to a stay, asserting that, as a government

enforcement action, the case is excepted from that provision.  The Court agrees with the FTC.

Pursuant to 11 U.S.C. § 362(b)(4), a bankruptcy petition does not operate as a stay of "the

commencement or continuation of an action or proceeding by a governmental unit ... to enforce such

governmental unit's police or regulatory power."  The FTC claims this suit is such an action.  It

concedes, however, that the actual enforcement of any money judgment it might obtain in an

---

connection with financial services, collection agencies, credit counselors and other financial advisors . . . .
***
The examples in this part . . . are *not exclusive*.
16 C.F.R. § 313.1(b) & § 313.2 (emphasis added).

[8]
       "An investment advisory company and a credit counseling service are each financial institutions
because providing financial and investment advisory services are financial activities referenced in section 4(k)(4)(C) of
the Bank Holding Company Act."  16 C.F.R. § 313.3(k)(2)(xii).

[9]
       16 C.F.R. § 313.4(a) provides that "financial institutions" "must provide a clear and conspicuous notice
that accurately reflects [ ] privacy policies and practices to . . . [a]n individual who becomes [a] customer," no later than
when that customer relationship is established.  An "[e]xample of establishing [a] customer relationship" includes "when
the consumer . . . [b]ecomes [a] client for the purpose of [being] provid[ed] credit counseling ... services..." 16 C.F.R.
§ 313.4(c)(3)(i)(D).

[10]
       AmeriDebt claims that its bankruptcy filing justifies a stay on at least two grounds: 1) 11 U.S.C. §
362(a)(1) provides an automatic stay against the continuation of any judicial proceeding commenced prior to the Petition
Date, or to recover a claim accrued prior to the Petition Date; and 2) 11 U.S.C. § 362(a)(3) provides a stay of any action
or attempt to obtain possession of property of the estate or to exercise control over property of the estate.

-8-

enforcement action such as this would not be exempt and would have to be handled by the Bankruptcy Court.  *See, EEOC v. McLean Trucking Co.*, 834 F.2d 398, 402 (4th Cir. 1987) ("EEOC is suing in exercise of its police or regulatory power and is not subject to the automatic stay until its monetary claims are reduced to judgment.").

AmeriDebt argues that a stay should apply insofar as the FTC requests equitable relief in the form of reformation or rescission of AmeriDebt's contracts with consumers, and of restitution in the form of consumer redress because those remedies would adjudicate the private rights of consumers, exert control over the property of the bankruptcy estate, and diminish AmeriDebt's primary asset – its contractual agreements with its clients.  AmeriDebt relies on *Safety-Kleen, Inc., (Pinewood) v. Wyche,* 274 F.3d 846, 865 (4th Cir. 2001), where the Fourth Circuit held:

> If the purpose of the law [that the government is attempting to enforce] is to promote "public safety and welfare," or to "effectuate public policy," then the exception applies. On the other hand, if the purpose of the law relates "to the protection of the government's pecuniary interest in the debtor's property," or to "adjudicate private rights," then the exception is inapplicable. (citations omitted)

The Court finds AmeriDebt's arguments unpersuasive.  The obvious purpose of the present action, indeed of the FTC Act itself, is protection of the public welfare and the effectuation of public policy respecting the credit counseling industry.  Regardless of whether private rights of consumers may be adjudicated in some fashion, in this proceeding the FTC is operating on behalf of the public interest, not as a creditor seeking to assert its own pecuniary interest.  *See id.* (holding that courts must distinguish between situations in which the state acts pursuant to its police power and situations in which the state acts merely to protect its status as a creditor.)  Assuming the liability of Defendants is established, the FTC's claims for rescission, restitution and disgorgement would primarily serve the

public purposes of justice and deterrence.[11]  *See, e.g., FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470

(11th Cir. 1996) ("[T]he purpose of [disgorgement] is not to compensate the victims of fraud but to

deprive the wrongdoer of his ill-gotten gain.") (citations omitted).  The remedies sought in this action fit

within the exemption provided for government enforcement actions under 11 U.S.C. §362(b)(4).  The

case will not be stayed as to AmeriDebt pending its bankruptcy proceeding.

IV.

AmeriDebt has filed Motions to Dismiss under Fed. R. Civ. P. 12(b)(1) & (b)(6). DebtWorks'

Motion to Dismiss, also incorporated by Andris Pukke, is based on Rule 12(b)(6).  Pamela Pukke's

Motion also proceeds under 12(b)(1) & (b)(6).

A motion filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure tests a court's

subject matter jurisdiction to adjudicate a case.  *See U.S. v. Morton*, 467 U.S. 822, 828 (1984).  A

facial attack on a complaint under the Rule challenges the sufficiency of the complaint's allegations.  *See*

*U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  If a defendant asserts a lack of subject matter

jurisdiction in a motion to dismiss, the plaintiff bears the burden of establishing that that jurisdiction

exists.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Thomson v. Gaskill*, 315 U.S.

442, 446 (1942); *Chergosky v. Hodges*, 975 F. Supp. 799, 800 (E.D.N.C. 1997).  Where, as here,

the motion challenges federal-question jurisdiction, the plaintiff must demonstrate that its claim is based

on federal law and is substantial.  *See Neitzke v. Williams*, 490 U.S. 319, 327 n.6 (1989).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) will be granted if the allegations of the

complaint, construed in the light most favorable to the plaintiff, fail as a matter of law to state a claim for

---

[11]

      The Fourth Circuit has recognized that a governmental entity may act within the Section 362(b)(4) exemption, "at the behest of and for the benefit of specific individuals . . . to vindicate the public interest . . . ."  *McLean Trucking*, 834 F.2d at 402, quoting *General Tel. Co. of the Northwest v. EEOC*, 446 U.S. 318, 326 (1980).

which relief can be granted.  *See Carter v. Burch*, 34 F.3d 257, 261 (4th Cir. 1994); *Ammer v. United States*, 881 F. Supp. 1007, 1010 (D. Md. 1994), *aff'd*, 56 F.3d 60 (4th Cir. 1995).  The district court must accept as true all well-pleaded material allegations of the complaint, *see Edwards v. Johnston County Health Dep't*, 885 F.2d 1215, 1217 n.4 (4th Cir. 1989), and must liberally construe it as a whole.  *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## V.

*AmeriDebt's Motion to Dismiss for Lack of Subject Matter Jurisdiction*

### A.

The FTC Act claims three bases for jurisdiction in this Court, 28 U.S.C. §§ 1331, 1337(a) & 1345 - - respectively, jurisdiction over cases involving a federal question, jurisdiction over any action arising from any Act of Congress regulating commerce, and jurisdiction over any case in which the United States is a plaintiff.  AmeriDebt claims that the FTC cannot facially or factually prove jurisdiction on any of these bases because the Commission cannot prove that AmeriDebt, a non-profit corporation, fits within the statutory definition of "corporation," as defined in Section 4 of the Act, 15 U.S.C. §44. The test of whether a "corporation" is covered by the Act, says AmeriDebt, is whether it was "organized" for *its own profit*; the Complaint in this case, however, alleges that AmeriDebt operates to *profit another*.  The mere fact that a non-profit organization and a for-profit corporation may be engaged in a "common enterprise," AmeriDebt continues, does not transform the nonprofit into a for-profit corporation; therefore the FTC and the Court lacks jurisdiction over a nonprofit.

B.

Preliminarily, the FTC argues that, although AmeriDebt has moved to dismiss based on a lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), its motion is more properly evaluated under Rule 12(b)(6), which challenges application of the FTC Act to AmeriDebt on the merits. AmeriDebt's Motion to Dismiss is not, the FTC argues, a challenge to the court's authority to hear the case, but instead is a factual challenge to an element of the FTC's claim, i.e., whether AmeriDebt is a "corporation" within the meaning of the FTC Act.[12]  The FTC asserts that the Court obviously has federal question jurisdiction to determine whether there has been a violation of the FTC Act.

The Court agrees that AmeriDebt's reliance on Rule 12(b)(1) is misplaced.  Whether AmeriDebt qualifies as a "corporation" for purposes of the FTC Act, individually or as part of a common enterprise, constitutes one of the elements that the FTC must prove in order to maintain its claim against AmeriDebt.  Merits-related challenges such as this go to the sufficiency of the pleadings, not to subject-matter jurisdiction.  *See e.g.*, *Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Jurisdiction . . . is not defeated . . . by the possibility that the averments [of the complaint] might fail to state a cause of action on which petitioners could actually recover."); *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981) ("Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.").  Accordingly, AmeriDebt's claim that it fails to qualify as a "corporation" for the purposes of the FTC

---

[12]

To the extent that AmeriDebt challenges the existence of facts sufficient to support an element of the claim, the FTC contends that it is more appropriately raised by way of a summary judgment motion, which the Court should not grant prior to full discovery.

Act must be analyzed under Fed. R. Civ. P. 12(b)(6).  *See FTC v. Citigroup*, 239 F. Supp.2d 1302,

1305 (N.D. Ga. 2001).

C.

Insofar as Rule 12(b)(6) is concerned, the Court begins with the proposition that the

prohibitions of the FTC Act apply to any corporation that is "organized . . . for its own profit."  15

U.S.C. § 44.  Although AmeriDebt is incorporated as a non-stock corporation with tax-exempt status,

the Court finds this insufficient to insulate it from the regulatory coverage of the FTC Act.  Courts have

consistently recognized that the Act applies to "corporations" organized for profit regardless of the form

of their charter or statutory source.  *See Cmty. Blood Bank of Kansas City Area v. FTC,* 405 F.2d

1011, 1018-20 (8th Cir. 1969).  Among the factors that determine whether an entity's purpose is, in

fact, charitable, are: whether the entity is organized as a non-profit; the manner in which it uses and

distributes realized profit; its provision of charitable purposes as a primary or secondary goal; and its

use of non-profit status as an instrumentality of individuals or others seeking monetary gain.  *Cmty.*

*Blood Bank*, 405 F.2d at 1019-20; *In re New England Motor Rate Bureau*, 112 F.T.C. 200, 270

(1989); *In re Ohio Christian Coll.*, 80 F.T.C. 815, 849-50 (1972) (finding FTC jurisdiction over an

ostensible non-profit).  Indeed, AmeriDebt does not appear to dispute that the FTC Act may be

applicable regardless of an entity's status as a "non-profit"; rather its contention is that the Complaint

fatally omits any allegation that the corporation was "organized for its own profit or that of its

members."  The FTC contends that its allegations are sufficient in this regard.  The Court finds the

allegations sufficient.

A complaint will pass muster under Rule 12(b)(6) if it contains facts sufficient for the court to

infer the presence of each element of a cause of action.  *Wolman v. Tose*, 467 F.2d 29, 33 n. 5 (4th

Cir. 1972).  The complaint need only contain "a short and plain statement of the claim showing that the

pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a).  "No technical forms of pleadings or motions are

required." Fed. R. Civ. P. 8(e).  A plaintiff, therefore, has only to "plead terms that are sufficient to

provide notice to his adversary." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 1281 (2d ed. 1990).

The Court is satisfied that the allegations of the Complaint support the characterization of

AmeriDebt as a de-facto for-profit organization, including: that it is not a non-profit entity (Count V);

that it does not engage in the charitable purpose of teaching consumers how to handle credit and

finances (Count III); and that it operates with the other Defendants as a common enterprise. [13]

AmeriDebt's Motion to Dismiss for lack of Subject Matter Jurisdiction will therefore be

DENIED.

VI.

*AmeriDebt's Motion to Dismiss Count V for Failure to State a Claim*

AmeriDebt also challenges Count V of the Complaint insofar as it asserts that AmeriDebt is "a

financial institution for purposes of the GLB Act and the Privacy Rule."  If determined to be such,

AmeriDebt may be liable for violations of the GLBA and the FTC's Privacy Rule by reason of its

belated delivery of privacy notices to customers.  AmeriDebt says that neither the BHCA nor the

FRB's Regulation Y indicate that a credit counseling organization is a "financial institution," hence the

---

[13]        AmeriDebt asserts that a more rigorous standard applies to the required factual pleadings of the
Complaint, due to the extensive investigation that the FTC has conducted into Defendants' activities over the past three
years. Defendants cite no authority for the proposition that pre-filing investigation mandates a higher pleading standard,
and the Court is aware of none.

FTC lacks statutory authority under the GLBA to regulate it and Count V must be dismissed with prejudice.

The FTC says AmeriDebt's argument ignores the plain language of the statutes.

The Court agrees with the FTC.

The GLBA defines "financial institution" as an entity "engaging in financial activities as described in Section 4(k) of [the BHCA]." 15 U.S.C. § 6809(3)(A).  The BHCA identifies as activities financial in nature, *inter alia*, "[p]roviding financial, investment, or economic advisory services," which clearly includes credit counseling.  12 U.S.C. § 1843(k)(4)(C).  The FRB's Regulation Y, incorporated in the BHCA definition, includes "[a]cting as an investment or financial advisor" and providing information to "consumers on individual financial management matters." 12 C.F.R. § 225.28(b)(6)(v).  Both provisions clearly embrace "credit counseling," "counsel[ing] and educat[ing] consumers" on financial matters, and "provid[ing] a financial roadmap for getting out of debt," activities clearly admitted to by AmeriDebt in its Motion.

As part of the DMP process, AmeriDebt brokers a consumer's credit with various creditors, collects payments from the consumer and transfers the payments received to end creditors.  These activities are well within the reach of the FTC Act.

Finally, insofar as there may be ambiguity in the term "financial institution," the Commission's interpretation of the definition to embrace credit counseling services is entitled to the Court's deference. *Chevron U.S.A., Inc. v. NRDC.*  467 U.S. 837 (1984).

VII.

*DebtWorks' and Andris Pukke's Motions to Dismiss*

DebtWorks has filed a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted, which Andris Pukke joins.  They challenge the FTC's Complaint on two grounds.  First,

they contest that Count I through IV of the Complaint sufficiently state claims against them individually since the allegations of material misrepresentations made to consumers are alleged against "Defendants," without specificity.  Second, they argue that the Complaint fails to allege a common enterprise sufficient to merge the separate identities of the corporation and of Pukke individually.

The FTC argues that each and every alleged misrepresentation is attributable to each and every Defendant, including DebtWorks and Andris Pukke, because, by reason of the commonality of the enterprise, DebtWorks and Pukke are liable for statements made by AmeriDebt, even if DebtWorks and Pukke did not make the misrepresentations directly.  Pukke, says the FTC, is particularly liable because he directed or controlled the deceptive practices.  As to whether the common enterprise theory is sufficiently alleged, the FTC asserts that its Complaint suffices to meet its burden of notice pleading.  Again the FTC has the better part of the argument.

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  It will be deemed sufficient if the court is able to infer each element of a cause of action.  *Wolman*, 467 F.2d at 33 n.5.  In considering allegations of misrepresentations, courts engage in a fact-specific inquiry in which the "pattern and frame-work of the whole enterprise must be taken into consideration."  *Goodman v. FTC*, 244 F.2d 584, 601 (9th Cir. 1957).  The factors to be considered include, *inter alia*: "common control, the sharing of office space and officers, whether business is transacted through 'a maze of interrelated companies,' the commingling of corporate funds and failure to maintain separation of companies, unified advertising, and evidence 'which reveals that no real distinction existed between the Corporate Defendants.'" *FTC v. Wolf*, 1996 WL 812940, *7 (S.D. Fla. 1996) (citing cases establishing the factors considered for 'common enterprise').

-16-

In the present case, the Complaint alleges that (1) Andris Pukke "directs, controls, formulates, or participates in" all the alleged practices, (2) "AmeriDebt, DebtWorks, and Pukke operate together as a common enterprise," (3) AmeriDebt and DebtWorks conducted business from the same office location in Germantown, Maryland, and (4) Defendants conduct their business practices "through an interrelated maze of companies that have had common ownership, officers, and business functions." The Complaint continues: "[Andris] Pukke was instrumental in the founding of AmeriDebt, currently owns DebtWorks, and controlled both companies for a period of time;" "other individuals have held key leadership positions for more than one of the corporate Defendants," and "DebtWorks employees held themselves out to be employees of AmeriDebt."[14]

The Court finds these allegations sufficient, if proven, to demonstrate that the companies did not operate as arm's length entities, but instead were so interrelated that 'no real distinction existed between them.' *See FTC v. Think Achievement,* 144 F. Supp.2d 993, 1011 (N.D. Ind. 2000)*; see also Wolf*, 1996 WL 812940, at *7.

In addition, insofar as the Complaint fairly alleges a common enterprise among Defendants to mislead and defraud consumers, all Defendants may very well be liable for the conduct, including misrepresentations, of other participants in the scheme.  *See, e.g., United States v. Layton*, 855 F.2d 1388, 1397-1400 (9th Cir. 1988); *see* 2 McCormick on Evidence, § 259 (1999).

Defendants' Motions to Dismiss Counts I - IV will be DENIED.

DebtWorks and Andris Pukke have also moved to dismiss Count V as it may be intended to apply to them individually, alleging that they cannot be held liable for AmeriDebt's omissive reporting

---

[14]       It is also noted, according to the allegations of the Complaint, that Relief Defendant Pamela Pukke originally founded AmeriDebt, and served as an officer of the company, while Andris Pukke established DebtWorks.

obligations under GLBA.  The Court agrees.  Count V, unlike the other Counts of the Complaint, does

appear to allege a cause of action against AmeriDebt alone, stating that "AmeriDebt did not send the

required notices," and, further, that "AmeriDebt's failure [to do so] constitutes a violation" of the

GLBA.  Indeed, only "financial institutions" are subject to the GLBA and only AmeriDebt is alleged to

be such.  Yet the general prayer for relief in the Complaint requests "judgment against Defendants . . .

for each violation charged in the Complaint."  To the extent that the FTC seeks relief against

DebtWorks and Andris Pukke under Count V, i.e., for violation of the GLBA reporting requirements,

the Court holds that the claim is deficient. The Court will dismiss Count V as to DebtWorks and Andris

Pukke, albeit without prejudice.[15]

## VIII.

### *Pamela Pukke's Motion to Dismiss*

Relief Defendant Pamela Pukke has filed her own Motion to Dismiss, in part incorporating

AmeriDebt's Motion to Dismiss for Lack of Subject Matter Jurisdiction, and DebtWorks' Motion for

Failure to State a Claim Upon Which Relief Can be Granted.  She argues that the FTC's claims against

her are derivative in nature and that, if the principal claims are dismissed, they cannot stand against her.

She also argues that the FTC's claims fail independently of those motions since she is an innocent

spouse who is not alleged to have been involved in wrongful conduct.[16]  The Complaint, she says, lacks

sufficient facts to support its allegations that she has been the direct beneficiary of funds or other

---

[15]

       Dismissal is granted without prejudice on the possibility – not apparent from the Complaint as it stands – that the FTC may be able to allege that DebtWorks and/or Andris Pukke had specific authority and responsibility with respect to AmeriDebt's filing obligations.

[16]

       The Complaint, to be sure, does not allege that Pamela Pukke was directly involved in any unlawful acts, either individually or as part of a "common enterprise."

property unlawfully derived.  She takes vigorous exception to the implication that there are no financially independent spouses.

To the extent that Ms. Pukke relies on the motions of the other parties to justify her own dismissal from the case, her argument is rejected for the same reasons as were the motions of those parties. However, for the same reason that the Court has granted DebtWorks' and Andris Pukke's Motion to Dismiss Count V as to them, it will also be granted as to Ms. Pukke, who similarly is not mentioned in the Count as having a reporting obligation under the GLBA.  Again, the dismissal will be without prejudice.

Beyond this, the Court agrees with the FTC that there is ample authority for naming Ms. Pukke as a Relief Defendant.  Section 13(b) of the FTC Act invests the Court with equitable powers over "innocent persons" in order to accomplish such relief as repayment, restitution, rescission or disgorgement of any unjust enrichment.  *See CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 192 (4th Cir. 2002) ("Federal Courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds.") (citations omitted). The Court is satisfied that, if the FTC succeeds in demonstrating Andris Pukke's wrongful obtention of monies, it may proceed against his wife to the extent she received any of those funds.

IX.

In sum, AmeriDebt's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Paper No. 18), and its Motion to Dismiss Count V for Failure to State a Claim Upon Which Relief Can Be Granted (Paper No. 19) are **DENIED**.  DebtWorks' and Andris Pukke's Motions to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Paper Nos. 20 & 21) are **GRANTED**

in **PART** and **DENIED** in **PART**, **GRANTED WITHOUT PREJUDICE** insofar as they seek

dismissal of Count V as to these two Defendants, but **DENIED** in all other respects.  Pamela Pukke's

Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be

Granted (Paper No. 16) is also **GRANTED** in **PART** and **DENIED** in **PART**, **GRANTED**

**WITHOUT PREJUDICE** insofar as it seeks relief under Count V, but **DENIED** in all other

respects.

A separate Order will be entered.


September 24, 2004                                      _____/s/_____

                                                                    PETER J. MESSITTE

                                                                    UNITED STATES DISTRICT JUDGE