IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **FEDERAL TRADE COMMISSION**, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PJM 03-3317 |
| **AMERIDEBT, INC.** *et al.*, | * | |
| Defendants. | * | |

## **OPINION**

### I.

The Federal Trade Commission (FTC) has sued AmeriDebt, Inc., DebtWorks, Inc., and Andris Pukke for misrepresentations and deceptive omissions under the Federal Trade Commission Act (FTC Act), 15 U.S.C. §§ 41-58. It has also sued AmeriDebt for violations of the disclosure requirements under the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801(a) *et seq*. The FTC alleges that Defendants, operating in common as a non-profit credit counseling service, defrauded consumers with debt problems by offering to fashion debt repayment plans for them, then deducting for their own benefit payments the consumers made under the plans without disclosing those deductions to the consumers. The FTC has also sued Pamela Pukke as Relief Defendant to recover such proceeds of these transactions as have been received by her husband, Andris Pukke, and transferred to her.

The FTC has filed a motion pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), requesting that the Court enter a preliminary injunction appointing a receiver, freezing the assets of Andris Pukke and DebtWorks, Inc. (collectively "Defendants"), requiring an accounting from them, and

directing that Andris Pukke repatriate assets he has transferred offshore.[1]  The Court held oral argument on the motion and took it under advisement.  On April 20, 2005 the Court entered an Order granting the Motion.  This Opinion sets forth the reasons for the Court's decision.

II.

The background of this litigation is set forth in FTC. v. AmeriDebt, 343 F. Supp. 2d 451 (D. Md. 2004).  In brief, the FTC alleges that Defendants (except for Pamela Pukke) operated as a common enterprise to deceive consumers into paying for high-cost debt management plans in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a).  After extensive discovery, the FTC filed a Motion for Summary Judgment Against DebtWorks and Andris Pukke, requesting that they be found liable, and that they be permanently enjoined and ordered to make restitution of some $172 million to injured consumers.  That motion is currently pending.  Meanwhile, the FTC alleges that since 2002, when Defendants became aware of the investigation that led to this lawsuit, Andris Pukke in particular has been actively dissipating Defendants' assets by making transfers to close friends and relatives, to trusts (both domestic and offshore), and by living a lavish lifestyle.[2]  For example, since 2003 Pukke and DebtWorks have transferred over $2.8 million to individuals who never worked for DebtWorks,

---

[1] Earlier in these proceedings, AmeriDebt filed a petition under Chapter 11 of the Bankruptcy Code and Mark D. Taylor was appointed as the Chapter 11 Trustee.  On March 25, 2005 the FTC announced a settlement with the AmeriDebt Trustee, which will not be final until the Bankruptcy Court and District Court enter orders approving it.  Since the settlement agreement is not final, the Trustee appeared on behalf of AmeriDebt in these proceedings and advised the Court that he agrees that the relief requested by the FTC is "necessary to prevent the further erosion of the Estate assets."

[2] When questioned about the dissipation of assets at his March 24, 2005 deposition, Pukke invoked his Fifth Amendment right against self-incrimination.  As a result, the FTC asserts and the Court agrees that in this civil proceeding the Court may draw appropriate adverse inferences against him with respect to the allegations of dissipation.  See, e.g., Baxter v. Palmigiano, 425 U.S. 308, 318-19 (1976); ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002).

including Pukke's father in Latvia, his girlfriend Angela Chittenden, and his wife Pamela, as well as at least $1.6 million to a company controlled by Pukke, Infinity Resources Group. In addition, less than two months after the FTC served AmeriDebt and DebtWorks with Civil Investigative Demands in May and August 2002, Pukke attempted to establish domestic and offshore trusts which the FTC asserts were part of an effort to put his assets out of reach of the FTC and other creditors.[3] Pukke, however, appears to retain substantial control over three primary trusts: The Pukke 2002 Family Irrevocable Trust (located in Delaware with estimated assets of over $8.8 million), The P Family Trust (established under the laws of the Caribbean island of Nevis with estimated assets of $9 million), and The P II Family Trust (established under the laws of the Cook Islands with estimated assets of $1.3 million). Lastly, the FTC catalogs numerous expenditures Pukke has made out of DebtWorks' funds to maintain personal residences, yachts and vacations unrelated to DebtWorks' business. The FTC asserts that if this behavior is allowed to continue, there is a substantial risk that it will not be able to satisfy any final order granting equitable monetary relief that may be entered in this case.

III.

---

[3] In support of this contention, the FTC cites a letter dated January 30, 2003 written by the attorney who created the trusts, Jonathan Gopman. In the letter Gopman explains that:
> [O]ne of the benefits of [Pukke's] foreign wealth protection structure is its ability to protect the underlying assets from the claims of future unforeseen creditors. The most effective method of protecting the underlying assets . . . is to hold [them] in an appropriate foreign jurisdiction and for each trust to have relatively few (if any) US contacts. Therefore, should [Pukke's] financial situation change or should he become (or potentially become) subject to litigation, I have informed him that it is important . . . to reevaluate the status of this structure and consider potential modifications that will help ensure the optimal protection of the underlying wealth.

Defendants oppose the Motion for Preliminary Injunction on the grounds that: (a) the Court lacks jurisdiction to grant the requested relief; (b) the FTC has failed to meet its burden of demonstrating a likelihood of success on the merits; (c) the FTC has failed to show that the balance of equities favors the entry of a preliminary injunction; and (d) any order granting the requested relief would violate the Anti-Injunction Act, 28 U.S.C. § 2283, and improperly interfere with the priority of federal tax liens.[4]

### A. *Jurisdiction*

Pursuant to Section 13(b) of the FTC Act, "in proper cases the Commission may seek, and after proper proof, the court may issue a permanent injunction." 15 U.S.C. § 53(b). The authority to grant such relief includes the power to grant any ancillary relief necessary to accomplish complete justice, including ordering equitable relief for consumer redress through the repayment of money, restitution, rescission, or disgorgement of unjust enrichment. FTC v. Febre, 128 F.3d 530, 534 (7th Cir. 1997). To insure that any final relief is complete and meaningful, the court may also order any necessary temporary or preliminary relief, such as an asset freeze. FTC v. Gem Merch. Corp., 87 F.3d 466, 469 (11th Cir. 1996). Exercise of this broad equitable authority, which is vested in the court's sound discretion, is particularly appropriate where the public interest is at stake. Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946) (citing Hecht Co. v. Bowles, 321 U.S. 321, 329 (1944)).

Defendants contend that the Court's jurisdiction to order the relief requested by the FTC is limited to "proper cases," which they contend are only those in which the FTC seeks "to halt a

---

[4] Pamela Pukke joins Defendants in arguing that any order of this Court would violate the Anti-Injunction Act by interfering with a consent *pendente lite* order she and Andris Pukke entered into in divorce proceedings presently pending in the Circuit Court for Montgomery County, Maryland.

straightforward violation of section 5 that require[s] no application of the FTC's expertise to a novel regulatory issue," citing FTC v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1028 (7th Cir. 1988). Defendants argue that since the FTC admitted in a press conference in November 2003 that this case involves "novel and difficult legal issues" rather than those involved in a routine fraud case, jurisdiction does not lie.

The FTC responds that a "proper case" under Section 13(b) is simply one that involves a violation "of any provision of law enforced by the Commission." Gem Merch., 87 F.3d at 468; FTC v. Evans Prods. Co., 775 F.2d 1084, 1086-87 (9th Cir. 1985) ("In attempting to limit §13(b) to cases involving 'routine fraud' or violations of previously established FTC rules, [Defendant] misreads both the case law . . . and the legislative history."); FTC v. Va. Homes Mfg. Corp., 509 F. Supp. 51, 54 (D. Md. 1981); FTC v. Mylan Labs., Inc., 62 F. Supp.2d 25, 36 (D. D.C. 1999). Since, according to the FTC, Defendants Pukke and DebtWorks used deceptive claims to induce consumers to purchase their product in violation of Section 5, this is a "proper case" under Section 13(b) over which this Court should exercise jurisdiction.[5]

The Court agrees with the FTC's reading of "proper case" and that it has jurisdiction to order the requested relief under Section 13(b) of the Act.

B. *Likelihood of Success on the Merits*

---

[5] The FTC argues that Defendants misconstrue World Travel. There, they say, the Seventh Circuit held that Congress expected that the FTC could "at least" rely on Section 13(b) to halt a straightforward violation of Section 5. But rather than barring a reliance on Section 13(b) in more novel cases, as Defendants suggest, the World Travel court in fact observed that a "substantial argument can be made" that the FTC can rely on Section 13(b) "for any violation of a statute administered by the FTC." 861 F.2d at 1028.

Before a district court may enter a preliminary injunction under Section 13(b), it must (i) consider the FTC's likelihood of success on the merits and (ii) weigh the equities. FTC v. Food Town Stores, Inc., 539 F.2d 1339, 1343 (4th Cir. 1976). This test is different from that used for private litigants, who must also prove irreparable injury, because in an FTC action harm to the public interest is presumed. FTC v. Affordable Media, 179 F.3d 1228, 1233 (9th Cir. 1999); Va. Homes Mfg. Corp., 509 F. Supp. at 59.

For their part, Defendants contend that for the FTC to prove a violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), it must demonstrate that their actions involved a material misrepresentation or omission "likely to mislead the consumer acting reasonably in the circumstances to the consumer's detriment," Southwest Sunsites, Inc. v. FTC, 785 F.2d 1431, 1435 (9th Cir. 1986), a burden the FTC cannot carry.

First, say Defendants, the FTC has failed to demonstrate that their statements were likely to mislead consumers. Instead the facts show that AmeriDebt was actually a non-profit entity whose customers were asked for an initial enrollment contribution which was understood to be voluntary, and that AmeriDebt in fact did educate and counsel its customers with respect to finances and credit. In addition, in contrast to the FTC's claim that the allegedly misleading statements were likely to result in detriment to consumers, Defendants cite evidence tending to show that enrollment in their program actually benefitted consumers. Finally, Defendants argue that the FTC has not shown that it can succeed against DebtWorks and Pukke on theories of vicarious liability, since it has not established the various factors that courts require to determine the existence of a common enterprise.

The FTC submits that Defendants are arguing the merits of the case under a summary judgment standard. The burden for prevailing on a motion for a preliminary injunction under Section 13(b) is far

more lenient. Specifically, the FTC "meets its burden on the 'likelihood of success' issue if it shows preliminarily, by affidavits or other proof, that it has a fair and tenable chance of ultimate success on the merits." FTC v. Beatrice Foods Co., 587 F.2d 1225, 1229 (D.C. Cir. 1978). This, the FTC submits, it has done through the exhibits entered in support of its Motion for Summary Judgment, *viz.* deposition testimony, declarations, and extensive documentary evidence. This evidence, according to the FTC, strongly suggests that AmeriDebt, DebtWorks, and Pukke operated as a common enterprise to deceive consumers into purchasing high-cost debt management plans, and then funneled the profits to Pukke and companies he owned.[6] Equally important, says the FTC, is the fact that on deposition, relying on the Fifth Amendment, Andris Pukke refused to respond to virtually every question asked of him with respect to issues relevant to whether the FTC is likely to prevail on the merits, and as a result of the Court may, in this civil proceeding, draw negative inferences about what he did or did not do. Baxter, 425 U.S. at 318-19; ePlus Tech., Inc., 313 F.3d at 179.

---

[6] The FTC also points out that it is not required to prove individual consumer reliance or injury in order to ultimately prevail and obtain consumer redress; it need only establish that a material misrepresentation or omission was made that was likely to mislead consumers acting reasonably under the circumstances. FTC v. Tashman, 318 F.3d 1273, 1277 (11th Cir. 2003); FTC v. Pantron I Corp., 33 F.3d 1088, 1095 (9th Cir. 1994); FTC v. Kuykendall, 371 F.3d 745, 764-66 (10th Cir. 2004) (en banc). Moreover, the FTC disputes the relevance of the findings of Defendants' two experts that few consumers complained to AmeriDebt about its practices or that some consumers actually benefitted from their debt management plans. The FTC argues that lack of consumer complaints is not a defense under the FTC Act, and that the measure of consumer injury is the amount paid by consumers for the product or service - regardless of the value gained. FTC v. Amy Travel Serv., 875 F.2d 564, 572 (7th Cir. 1989); Detroit Auto. Purchasing Serv's, Inc. v. Lee, 463 F. Supp. 954, 968 (D. Md. 1978); McGregor v. Cherico, 206 F.3d 1378, 1388-89 (11th Cir. 2000); FTC v. Figgie Int'l, Inc., 994 F.2d 595, 605-06 (9th Cir. 1993).

The Court need not resolve these issues at this juncture, which are more properly addressed at the summary judgment stage. For present purposes it will suffice if the FTC demonstrates that there is factual and legal authority for concluding that the FTC has a "fair and tenable chance of ultimate success on the merits."

The Court agrees that Pukke's refusal to answer questions about his possible dissipation of assets, coupled with the exhaustive evidence marshaled by the FTC in support of its Motion for Summary Judgment, establish that the FTC has "a fair and tenable chance of ultimate success on the merits."

### C. *Balancing the Equities*

Although a district court must weigh the public and private equities in an FTC action for injunctive relief, courts have held that the public interest should receive greater weight in such proceedings. World Travel, 861 F.2d at 1030. The Fourth Circuit has gone so far as to say that private injuries "are not proper considerations for granting or withholding injunctive relief under Section 13(b)." Food Town Stores, 539 F.2d at 1346.

Even so, Defendants argue that the injunctive relief the FTC seeks is unwarranted because all the transfers of which it complains transpired prior to his "financial reverses," and in any case there has been "no extravagance and no offshore transfers."

Apart from urging that Pukke's alleged personal hardship be given little weight, the FTC points out that under the injunction Pukke will still be allowed to earn income through gainful legitimate employment and at the same time will have a mechanism through which to seek reasonable living expenses and attorney's fees. In contrast, the public interest in preserving the possibility of effective relief at the end of litigation requires the appointment of a receiver, an asset freeze, an accounting, and a repatriation of all transferred assets before they are completely dissipated.

The Court agrees with the FTC that in balancing the equities, the public interest predominates and will be best served by the appointment of a receiver, an asset freeze, an accounting, and a repatriation of Defendants' assets.

D. *Anti-Injunction Act and Tax Lien Considerations*

Defendants' final argument is that any court order granting the FTC's request for relief would violate the Anti-Injunction Act (AIA), 28 U.S.C. § 2283, because it would in effect enjoin Pukke from making payments pursuant to the *pendente lite* support decree he and Pamela have entered into in state court. In addition, Defendants maintain that any injunction would prevent "Mr. Pukke from dealing with his obligations to the IRS, and would interfere with the IRS liens which have precedence over any interest that the FTC could attempt to assert." The Court rejects both arguments.

The AIA instructs that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The FTC submits that the AIA does not apply to the United States or its agencies. Leiter Minerals, Inc. v. United States, 352 U.S. 220, 225 (1957); Mitchum v. Foster, 407 U.S. 225, 235-36 (1972). Moreover, it says, a grant of relief in this case would not improperly affect the Pukkes' divorce case since Maryland has long recognized the doctrine of constructive trust which requires that any proceeds of wrongdoing may be properly ordered held in trust for the victims of the wrongdoing. Bowie v. Ford, 269 Md. 111, 118-19, 304 A.2d 803, 808-09 (Md. 1973). Freezing the assets in this case would do no more than effectuate Maryland law by preserving the Pukkes' ill-gotten gains for eventual return to their victims. Finally, the FTC points out that the state court *pendente lite* decree is a consent decree, i.e., it is one in which Andris Pukke, Pamela Pukke, and presumably their counsel themselves fixed the amount of money he would pay to her each month. Thus, in addition to a base payment of $30,000 per month, Pukke has agreed to pay the mortgages on family residences, private schooling for the parties' children, and a host of other add-ons. His total average payments certainly approach, may even exceed, six

figures per month. The FTC argues that Defendants should not be permitted to use their divorce proceedings to redistribute, shield, and divert assets that may ultimately belong to consumer victims.

The FTC also disputes Defendants' reference to unspecified "IRS liens" as a reason for the Court to deny relief in this case. Under the same doctrine of constructive trust previously referred to, even if the IRS has placed liens on Defendants' assets, those liens would not attach to property that was wrongfully obtained from consumers, precisely what the FTC alleges in this case. See FTC v. Crittenden, 823 F. Supp. 699, 703 (C.D. Cal. 1993), aff'd, 1994 WL 59803 (9th Cir. 1994). Defendants leave this argument unanswered.

The Court agrees with the FTC's arguments and concludes that neither the AIA nor any possible IRS liens bar the granting of preliminary injunctive relief in the present case.

IV.

Turning to the order proposed by the FTC, which Defendants objected to, the Court, with a few minor exceptions, has adopted the order submitted by the FTC. Specifically:

1) The Court has named Robb Evans & Associates, LLC, Sun Valley, California as Receiver, based on that entity's extensive experience in locating and marshaling assets, including those located offshore. The Court notes that Robb Evans has worked on over 100 asset retrieval cases and has marshaled over a billion dollars in assets. Despite the fact that Robb Evans is located in California, the Court accepts the FTC's representation that much of the discovery in the case has already been conducted which can be shared electronically, so that any need for Robb Evans personnel to travel back and forth to Maryland will be limited;

2) The Court finds no Fifth Amendment problem in requiring Andris Pukke to provide information under oath. The Court's Order simply requires him to provide an accounting of assets, a

standard provision in asset freeze orders. When ordered to provide an accounting, Pukke will be free to assert any Fifth Amendment privilege he might have, after which the FTC may seek an order of contempt. At that point, the issue will be ripe for the Court's consideration. See FTC v. Phoenix Avatar, 2004 WL 1746698, *13-15 (N.D. Ill. 2004);

3)  The Court has revised slightly the proposed order and has required that information be turned over in ten (10) business days rather than five (5);

4)  As for the provisions requiring Defendants to provide information to the AmeriDebt Trustee, the Court has rejected Defendants' argument that because the Trustee may have claims against the Defendants, he is an adverse party who should not have access to asset information. As the FTC points out, the Bankruptcy Code (11 U.S.C. § 543) provides that, to the extent a Receiver holds property of the bankruptcy estate, he is a custodian of that property and is obliged to turn it over at the Trustee's request. If there is any overlap between the property of the bankruptcy estate and that of the receivership, the notice provisions of the Court's order will enable the Trustee and the parties to sort these issues out in due course;

5)  The Court has also rejected Defendants' suggestion that their attorneys fees should routinely be subject to court review and approval as opposed to approval by the Receiver, or that payment of the fees should be consistent with Defendants' retainer agreement. To the extent Defendants feel aggrieved by any decision of the Receiver in this regard they may always file a petition for review with the Court;

6)  As for living expenses, the Court does not agree that Andris Pukke should be allowed to continue servicing existing mortgage payments or make payments to his wife pursuant to a consent *pendente lite* order of the Circuit Court for Montgomery County. Pukke may spend

freely any income earned from gainful employment and, if need be, he can obtain financial assistance from his friends and family. He may also seek expenses from any frozen funds after prior written approval by the Receiver or the Court. As for mortgage payments, since Pukke's residences will become Receivership property, the Receiver may take whatever acts are necessary to conserve, hold and manage these properties;

7) The Court believes that the FTC proposal regarding the periodic accounts of the Receiver is sensible. The Receiver must provide a preliminary report to the Court ninety (90) days after being appointed and thereafter at regular intervals of three (3) months until discharged. Any more frequent accounting would unnecessarily increase expenses. The Receiver's compensation is always subject to Court approval;

8) Defense Counsel will be provided with copies of any Receiver's reports filed with the Court;

9) As for *ex parte* filings by the Receiver, the Court accepts that this is a standard provision. The Receiver may file an *ex parte* Affidavit of Non-Compliance whenever any person or entity fails to deliver or transfer any Receivership Property or otherwise fails to comply with that person or entity's obligations under the Order. The Court may also authorize Writs of Possession or Sequestration or other equitable writs requested by the Receiver, and the Court may take other appropriate action including requiring notice to Defendants;

10) As far as the power of the Court to compel trustees to turn over trust assets to the Receiver, the Order requires Defendants, not the trustees, to turn over trust assets to the Receiver. If Andris Pukke, who appears to maintain substantial *de facto* control over the trusts, violates this Order and fails to repatriate assets in the trusts, the FTC may move for contempt, at which

-13-

point Defendants will be free to argue the impossibility of performance, an argument the Court may or may not find persuasive.

V.

For all the foregoing reasons, the FTC's Motion for Preliminary Injunction (Paper No. 103) was GRANTED by Order of the Court dated April 20, 2005.

May 9, 2005                                         /s/
                                         PETER J. MESSITTE
                                         UNITED STATES DISTRICT JUDGE