# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

MAY 1 7 2006

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUT

|  |  |
|---|---|
| **FEDERAL TRADE COMMISSION,** | ) |
| Plaintiff, | ) |
| v. | ) |
| **AMERIDEBT, INC., et al.,** | ) |
| Defendants. | ) |

**Civil Action No. PJM 03-3317**

## STIPULATED FINAL JUDGMENT AND PERMANENT INJUNCTION
## AS TO DEFENDANTS DEBTWORKS, INC. AND ANDRIS PUKKE

Plaintiff, the Federal Trade Commission ("Plaintiff," "FTC" or "Commission"), filed a

Complaint for permanent injunctive and other equitable relief pursuant to Sections 5(a) and 13(b)

of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a) and 53(b). The

Complaint charges Defendants AmeriDebt, Inc. ("AmeriDebt"), DebtWorks, Inc.

("DebtWorks"), and Andris Pukke ("Pukke") with unfair or deceptive acts or practices in

promoting and offering credit counseling and debt management plans ("DMPs") in violation of

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). The Complaint also names Pamela Pukke as a

relief defendant.

The Plaintiff and Defendants Pukke and DebtWorks ("Defendants"), by and through their

respective counsel, have agreed to entry of this Stipulated Final Judgment and Permanent

Injunction ("Order") by this Court without trial or adjudication of any issue of fact or law, and

without Defendants admitting liability for any of the matters alleged in the Complaint, except

that Defendants stipulate that: (1) any and all funds and assets that comprise Receivership

Property were derived from payments by consumers as an alleged consequence of the acts and

practices alleged in the FTC's complaint; (2) the Defendants do not have a legitimate claim to

those funds; and (3) those funds are held in constructive trust for consumers.

      This Order settles only the FTC's claims against Defendants Pukke and DebtWorks, and

shall not act as a bar to any claim by the FTC nor preclude the FTC from seeking any remedy

against any other persons, corporations, or entities, including persons who may be subject to

portions of this Order as persons acting in active concert or participation with Defendants, or

persons who are party to any indemnification agreement with Defendants. Further, the Parties

have agreed that this Order shall be filed for approval contemporaneously with the filing of a

motion for approval of the nationwide class action settlement as to Defendants in *Alyssa*

*Polacsek, et al. v. Debticated Consumer Counseling, Inc., et al.,* Case Number PJM-04-cv-631

(D. Md.) (consolidated for trial with the Commission's action herein) ("Nationwide Class

Action"). These two settlements are intended to resolve all claims that have been or could have

been asserted on the facts as alleged in the FTC and Nationwide Class Action cases. In the event

that, for any reason, the settlement in the Nationwide Class Action does not receive final

approval or the Nationwide Class does not prevail on any appeal taken from a final approval,

Defendants agree and stipulate that this Order remains final as to the FTC and the Defendants.

      **NOW, THEREFORE,** the Plaintiff and Defendants having requested the Court to enter

this Order,

      **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

# FINDINGS

1.     This is an action under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), to secure permanent injunctive relief, rescission, restitution, disgorgement, and other equitable relief for Defendants' violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

2.     This Court has subject matter jurisdiction over this action and jurisdiction over all parties. Venue in the District of Maryland is proper.

3.     The activities of Defendants charged in the Complaint are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

4.     Any and all funds and assets comprising Receivership Property were derived from payments by consumers as an alleged consequence of the acts and practices alleged in the FTC's complaint. Further, Defendants do not have a legitimate claim to those funds. Therefore, any and all funds and assets comprising Receivership Property are held in constructive trust for consumers as defined by applicable state law.

5.     Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order. Defendants also waive all rights that may arise under the Equal Access to Justice Act, 28 U.S.C. § 2412.

6.     This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

7.     Pursuant to Federal Rule of Civil Procedure 65(d), the provisions of this Order are binding upon Defendants, their successors, and assigns, and their officers, agents, servants, employees, and attorneys, and upon those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or

otherwise.

8.    This Order is remedial in nature and shall not be construed as the payment of a fine, penalty, punitive assessment, or forfeiture.

9.    On July 11, 2005, Pukke filed a voluntary petition for relief under the provisions of Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Pukke Bankruptcy Case").

10.    Subsequently, the Bankruptcy Court granted the FTC's motion to transfer venue of the Pukke Bankruptcy Case to the District of Maryland, where it was docketed as Case No. 05-2362-PJM.  This Court withdrew the reference as to the Pukke Bankruptcy Case and then stayed the Pukke Bankruptcy Case.

11.    The Commission's action against Pukke, including the entry and enforcement of this Order, is not stayed by 11 U.S.C. § 362(a)(1), (2), (3) or (6) because it is an exercise of the Commission's police or regulatory power as a governmental unit pursuant to 11 U.S.C. § 362(b)(4) and thus falls within an exemption from the automatic stay.

12.    Entry of this Order is in the public interest.

## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1.    "Assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, including, without limitation, chattels, goods, instruments, equipment, fixtures, general intangibles, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, contracts, receivables, shares of stock, interest in any trust, and all cash,

wherever located, and shall include both existing Assets and Assets acquired after the date of entry of this Order. Further, the definition of Assets shall include all books, records, computer files, databases and other information that may be utilized to determine the existence of Assets, liabilities, or the location of property.

2. "Assisting" means providing assistance or support to any person or entity, including, but not limited to, providing any of the following goods or services: (a) formulating, drafting, providing, or arranging for the formulation, drafting, or provision of any marketing material; (b) providing names of, or assisting in the generation of, potential customers; (c) performing marketing services of any kind; (d) formulating, drafting, providing, or arranging for the formulation, drafting, or provision of any employee script; (e) providing any training or training materials; or (f) providing information, advice, consultation, or materials regarding business operations, processes, or practices.

3. "Credit counseling" means providing individualized advice to a consumer about the consumer's credit, debts, or budget.

4. "Credit education" means providing general information or advice to a consumer about credit, debt, or budget matters.

5. "Debt management" means providing any service to a consumer relating to managing debts, including providing debt management plans.

6. "Debt management plan," "debt management program," or "DMP" means a plan or program that involves or purports to involve (a) a consumer paying one consolidated periodic payment to the program to cover the debts that are included in the program; and (b) the program disbursing payments to the creditors of the consumer.

Case 8:03-cv-02362-PJM Document 136 Filed 11/14/2006 Page 6 of 35

7.   "DebtWorks" means DebtWorks, Inc., whether acting directly or through any corporation, subsidiary, division, or other device.

8.   "Document" is synonymous in meaning and equal in scope to the usage of the term in Rule 34(a) of the Federal Rules of Civil Procedure and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which the information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or other non-identical copy is a separate document within the meaning of the term.

9.   "Net Monies" means all monies obtained by the Receiver after the Receiver marshals and liquidates Receivership Property and pays all approved compensation and expenses.

10.  "Person" means any natural person or organization including, but not limited to, any proprietorship, partnership, company, firm, corporation, joint venture, society, association, trust, or government agency or unit, and any other group or combination acting as an entity.

11.  "Pukke Bankruptcy Estate" means the bankruptcy estate that was created pursuant to 11 U.S.C. § 541(a) upon the commencement of the Pukke Bankruptcy Case.

12.  "Receiver" or "Permanent Receiver" shall mean Robb Evans & Associates LLC, the receiver appointed by the Court in this matter over the Assets of Defendants Andris Pukke and DebtWorks, Inc.

13.  "Redress Program" shall mean a program to be established and administered by the FTC for the purpose of providing consumer redress as set forth in this Order.

14.  "Receivership Property" shall mean any Assets, wherever located, that are (1) owned,

controlled or held by or for the benefit of Pukke or DebtWorks, in whole or in part; (2) in the actual or constructive possession of Pukke or DebtWorks; (3) held by an agent of Pukke or DebtWorks, including as a retainer for the agent's provision of services to either or both of them; or (4) owned, controlled or held by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned or controlled by either Pukke or DebtWorks, including The P Family Trust, The P II Family Trust, and The Pukke 2002 Family Irrevocable Trust. Defendants agree that all Receivership Property constitutes assets held for consumers in constructive trust as defined by applicable state law. *Provided however,* that Receivership Property shall not include (1) income earned by Pukke from gainful employment in accordance with Sections I, II, and XII of this Order or (2) funds given to Pukke by his friends and family members, so long as such funds did not derive or originate from Receivership Property, directly or indirectly, in whole or in part;

15. "Telemarketing" means any business activity (which includes, but is not limited to, initiating or receiving telephone calls, managing or contracting with others who initiate or receive telephone calls, operating an enterprise that initiates or receives telephone calls, owning an enterprise that initiates or receives telephone calls, or otherwise participating as an officer, director, employee or independent contractor in an enterprise that initiates or receives telephone calls) that involves attempts to induce consumers to purchase any item, good, or service, or to enter a contest for a prize, by means of telephone sales presentations, either exclusively or in conjunction with the use of other forms of marketing. *Provided* that, for the purpose of Section II.D of this Order, "telemarketing"

shall be as defined as set forth in the Telemarketing Sales Rule, 16 C.F.R. § 310.2.

## I. BAN ON CREDIT COUNSELING, CREDIT EDUCATION, OR DEBT MANAGEMENT

**IT IS FURTHER ORDERED** that Defendants are hereby permanently restrained and enjoined from engaging in, participating in, or assisting others to engage or participate in credit counseling, credit education, or debt management. Nothing in this Order shall be read as an exception to this Section I.

## II. PROHIBITED BUSINESS ACTIVITIES

**IT IS FURTHER ORDERED** that, in connection with the telemarketing of any good or service, Defendants, as well as their successors, assigns, officers, agents, servants, employees, or affiliates, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby permanently restrained and enjoined from:

    A.    making, or causing or assisting others to make, expressly or by implication, any false or misleading representation, including but not limited to misrepresenting:

        1.    the existence, absence, terms, or amount of any fees, contributions, monies, or other costs, whether monetary or in kind, associated with the goods or services;

        2.    that no profits are being made from the goods or services provided;

        3.    any restriction, limitation, or condition to purchase the goods or services;

        4.    any aspect of the performance, efficacy, nature, or central characteristics of the goods or services; and

5.    any other matter regarding the goods or services;

B.    requesting or receiving payment of any fee or consideration for goods or services

represented to remove derogatory information from, or improve, a person's credit

history, credit record, or credit rating until:

1.    the time frame in which the defendant has represented all of the goods or

services will be provided to that person has expired; and

2.    the defendant has provided the person with the documentation in the form

of a consumer report from a consumer reporting agency demonstrating that

the promised results have been achieved, such report having been issued

more than six months after the results were achieved;

C.    requesting or receiving payment of any fee or consideration in advance of

obtaining a loan or other extension of credit when the defendant has guaranteed or

represented a high likelihood of success in obtaining or arranging a loan or other

extension of credit for a person; and

D.    violating the Telemarketing Sales Rule, 16 C.F.R. Part 310.

### III. MONETARY RELIEF

**IT IS FURTHER ORDERED** that:

A.    Judgment is hereby entered in favor of the Commission and against Defendants

Pukke and DebtWorks, jointly and severally, in the amount of ONE HUNDRED

SEVENTY-TWO MILLION DOLLARS ($172,000,000) (the "Judgment").

B.    Except as provided in Sections III.D. and IV of this Order, the Judgment shall be

suspended if the Defendants satisfy the following conditions:

1.  Defendants acknowledge that the Receivership Property is comprised of
    Assets held in constructive trust under applicable state law and irrevocably
    assign, waive, release, discharge, and disclaim to the Commission any and
    all right, title, interest, and claims, known and unknown, that either
    Defendant has or may have in, to or against any and all Receivership
    Property; *provided however*, that Pukke and anyone residing with him may
    continue to reside at the Receivership Property located at 31 Linda Isle,
    Newport Beach, California 92660 ("Linda Isle property") until ten (10)
    days prior to the closing of a contract for sale of the property or 180 days
    after the date of entry of this Order, whichever occurs first, at which time
    he and anyone residing with him must vacate the property, so long as
    Pukke, and anyone residing at that address with him, (1) fully cooperate
    with the Receiver's efforts to market and sell the property, including
    granting the Receiver or its agents access to the property to show it to
    prospective buyers upon twenty-four (24) hour telephonic notice at
    Pukke's telephone number to be provided to the Receiver upon the date of
    entry of this Order; (2) do not interfere with such sale; and (3) do not by
    action or inaction reduce the value of the property; *provided further* that
    Pukke may retain his personal furnishings located in the residence at the
    Linda Isle property;

2.  Pukke releases and waives any statutory, common law, or other homestead
    exemption, including tenancy by the entirety protection, that may apply to

the Linda Isle property or to any other real or personal property in which Pukke has any interest as of the date of entry of this Order and shall not declare or claim any homestead exemption in the Linda Isle Property, or such other property. Pukke also releases and waives any statutory, common law or other exemption in any and all assets, real or personal, constituting Receivership Property;

3.  Pukke shall cooperate fully with the Commission and be responsible for preparing, executing, and recording the necessary documents and taking any additional actions the Commission deems necessary or desirable to evidence and effect the assignment, waiver, release, discharge, and disclaimer to the Commission of his right, title, interest, and claims in, to or against the assets constituting Receivership Property and to carry out the purposes of this Order; and

4.  Within three (3) business days of execution of this Order by both Plaintiff and Defendants, Pukke shall file a motion in the Pukke Bankruptcy Case to obtain that court's permission to enter into this Order and take any and all actions necessary and appropriate to implement and effectuate this Order. Any plan of reorganization or liquidation proposed by Defendant Pukke or otherwise confirmed in the Pukke Bankruptcy Case, pursuant to 11 U.S.C. § 1129, shall be consistent with the terms of this Order and shall not modify or otherwise supersede this Order, including the District Court's exclusive jurisdiction to interpret and enforce this Order.

5.    If the Defendants satisfy all of the conditions described in this Section

III.B. and except as provided in Sections III.D. and IV of this Order, the

Judgment against Defendants shall be suspended, and the FTC agrees that

it will not participate in any distribution to creditors in the Pukke

Bankruptcy Case or file a complaint for nondischargeability or take any

other action to determine nondischargeability of the Judgment owed to the

FTC under Section III.A. of this Order.

C.    If Defendants do not satisfy the conditions set forth in Section III.B.:

1.    The Judgment shall not be suspended, and Defendants shall owe the FTC

$172,000,000, the approximate amount of consumer injury alleged in

Plaintiff's complaint;

2.    The FTC shall hold an allowed, general non-priority unsecured claim

against Pukke in the Pukke Bankruptcy Case pursuant to 11 U.S.C. § 502

in the amount of ONE HUNDRED SEVENTY-TWO MILLION

DOLLARS ($172,000,000), and the FTC shall receive any distribution to

which it is entitled under the priorities of the Bankruptcy Code in the

Pukke Bankruptcy Case;

3.    Pukke shall not oppose any motion by the FTC for the appointment of a

trustee in the Pukke Bankruptcy Case, but the FTC agrees that it will not

nominate or otherwise propose the Receiver to serve as the trustee; and

4.    The FTC reserves its right to file a complaint to determine the

nondischargeability of the Judgment owed to the FTC under Section III.A.

Page 12 of 35

of this Order. Pukke agrees that the deadline for the FTC to file any such

complaint to determine nondischargeability shall be up to and including

the effective date of any plan confirmed in the Pukke Bankruptcy Case or

the date on which the Pukke Bankruptcy Case is closed, whichever is later.

D.   The Receiver shall marshal and liquidate the Receivership Property in accordance

with Section IX of this Order, and turn over monies to the FTC in accordance with

Section IX.O. of the Order.  If the Net Monies derived from liquidation of the

Receivership Property exceed $35 million, the FTC agrees to accept THIRTY-

FIVE MILLION DOLLARS ($35,000,000) in satisfaction of its Judgment, and

any Net Monies exceeding $35,000,000 shall be turned over to the Pukke

Bankruptcy Estate for distribution in accordance with the priorities of the

Bankruptcy Code. *Provided however* that if for any reason the Receiver is

precluded from turning over any Net Monies to the FTC as set forth herein or such

Net Monies are determined to belong to the Pukke Bankruptcy Estate, then

(1) the FTC shall hold an allowed, general non-priority unsecured claim against

Pukke in the Pukke Bankruptcy Case pursuant to 11 U.S.C. § 502 in the amount

of ONE HUNDRED SEVENTY-TWO MILLION DOLLARS ($172,000,000),

(2) the FTC shall receive any distribution to which it is entitled under the

priorities of the Bankruptcy Code in the Pukke Bankruptcy Case, and (3) the FTC

agrees that it will not file a complaint for nondischargeability or take any other

action to determine nondischargeability except as provided in Section IV.C. of

this Order; *provided further* that Pukke shall not oppose any motion by the FTC

for the appointment of a trustee in the Pukke Bankruptcy Case, but the FTC agrees

that it will not nominate or otherwise propose the Receiver to serve as the trustee.

E.   Any and all funds paid pursuant to this Order shall be paid by electronic funds

transfer pursuant to instructions provided by the Commission for deposit into a

fund administered by the Commission or its agents for equitable relief including,

but not limited to, consumer redress and any attendant expenses for the

administration of any redress fund.  If the related settlement in the Nationwide

Class Action receives final approval and the Nationwide Class prevails on any

appeal noticed from that settlement, the FTC and counsel for the plaintiffs in the

Nationwide Class Action shall agree upon a program whereby the funds will be

distributed fairly to class members in the Nationwide Class Action, and for

plaintiffs' attorneys' fees and costs as approved by the Court in the Nationwide

Class Action, *provided, however,* that the FTC reserves the right to object to the

amount of attorneys fees and costs requested by plaintiffs' counsel in the

Nationwide Class Action.  In the event that direct redress to consumers is wholly

or partially impracticable or funds remain after redress is completed, the FTC, in

consultation with plaintiffs' counsel in the Nationwide Class Action, may apply

any remaining funds for such other equitable relief (including consumer

information remedies) as it determines to be reasonably related to Defendants'

practices as alleged in the Complaint.  Any funds not used for such equitable relief

shall be deposited to the United States Treasury as disgorgement.  Defendants

shall have no right to challenge the FTC's choice of remedies under this

Subsection.

F.      Except as otherwise provided herein, Defendants relinquish all dominion, control

and title to the funds and assets comprising Receivership Property and to funds

paid to the FTC pursuant to this Order. Defendants shall make no claim to or

demand for the return of the funds, directly or indirectly, through counsel or

otherwise.

G.      All funds paid pursuant to this Order are equitable monetary relief, solely

remedial in nature, and not a fine, penalty, punitive assessment, or forfeiture; and

H.      Defendants are hereby required, in accordance with 31 U.S.C. § 7701, to furnish

to the FTC their tax identification numbers, which shall be used for purposes of

collecting and reporting any delinquent amounts arising out of this Order.

## IV. TERMINATION OF SUSPENSION

**IT IS FURTHER ORDERED** that:

A.      The Commission's agreement to, and the Court's approval of, this Order as to

Defendants is expressly premised upon the truthfulness, accuracy, and

completeness of Defendants' financial condition, as represented in DebtWorks'

financial statement dated May 2, 2005, and Pukke's financial statement dated

January 5, 2006, upon which the Commission relied in negotiating and agreeing to

the terms of this Order. By agreeing to this Order, Defendants reaffirm and attest

to the truthfulness, accuracy, and completeness of these financial statements.

B.      If, upon motion by the Commission, this Court finds that any Defendant

possessed, in whole or in part, of record or beneficially, any Asset not disclosed in

the Defendants' financial statements that constitutes Receivership Property and

that is exempt from the Pukke Bankruptcy Estate, such Asset, or the fair market

value thereof, calculated as of the date of entry of this Order or the date of

turnover of the Asset, whichever value is greater, shall be turned over to the FTC

by that Defendant within ten (10) days and shall be used for consumer redress in

accordance with this Order. *Provided* that in all other respects this Judgment shall

remain in full force and effect unless otherwise ordered by this Court, and that

proceedings instituted under this section are in addition to, and not in lieu of, any

other civil or criminal remedies as may be provided by law, including any other

proceedings the FTC may initiate to enforce this Order.

C.     The FTC reserves its right to file a complaint to determine the nondischargeability

of any debt determined to be owed to the FTC under Section IV.B. of this Order.

Pukke agrees that the deadline for the FTC to file any such complaint to determine

nondischargeability of such debt shall be up to and including the effective date of

any plan confirmed in the Pukke Bankruptcy Case or the date on which the Pukke

Bankruptcy Case is closed, whichever is later.

## V. EFFECT OF NATIONWIDE CLASS ACTION SETTLEMENT

**IT IS FURTHER ORDERED** that the claims settled in this Order shall be distinct and

severable from any claims advanced by the plaintiffs in the Nationwide Class Action and settled

with Defendants. If the United States District Court for the District of Maryland or any appeals

court should decline to certify, decertify, or refuse to approve the settlement of any such claims,

that decision shall not affect either the implementation of the Redress Program or the terms of

this Order, and nothing in this Order shall be used as evidence against the Defendants in the Nationwide Class Action.

## VI. COORDINATION WITH NATIONWIDE CLASS ACTION

**IT IS FURTHER ORDERED** that the FTC and counsel for the plaintiffs in the Nationwide Class Action shall negotiate and agree upon the content and manner of dissemination of a notice of the parallel settlement achieved in the Nationwide Class Action (the "Notice"), which must be submitted to and approved by the United States District Court for the District of Maryland in the Nationwide Class Action. Upon approval of such settlement, the FTC and counsel for the plaintiffs in the Nationwide Class Action shall negotiate and agree upon the manner of dissemination of the distribution to any class members of the Nationwide Class Action. Class members in the Nationwide Class Action that receive redress through the FTC Redress Program shall be notified that the distribution constitutes a distribution from the Nationwide Class Action and satisfies the Nationwide Class Action's obligations to those consumers. The Nationwide Class Action plaintiffs shall bear all costs associated with dissemination of the Notice. In addition, plaintiffs' counsel in the Nationwide Class Action shall bear all costs associated with receiving and processing consumers' requests for exclusion ("opt outs") from the class. Plaintiffs' counsel in the Nationwide Class Action shall not be responsible for any costs directly related to the FTC's redress program (*e.g.,* the FTC's provision of redress checks to consumers).

## VII. REDRESS PROGRAM ADMINISTRATION

**IT IS FURTHER ORDERED** that the Redress Program shall be established and administered by the FTC in its sole discretion for the purpose of providing consumer redress.

Page 17 of 35

The FTC, in consultation with plaintiffs' counsel in the Nationwide Class Action, shall determine

the plan for the disbursement of the funds to consumers in the Nationwide Class Action. The

FTC, in its sole discretion, shall assign the administration of the Redress Program to one of its

approved contractors (Redress Program Administrator). Defendants shall have no right to

contest the substance or manner of distribution of redress (including any attendant costs), nor the

FTC's selection of the Redress Program Administrator.

## VIII. COOPERATION WITH GOVERNMENT COUNSEL

**IT IS FURTHER ORDERED** that Pukke shall, in connection with this action and in

connection with the Pukke Bankruptcy Case, cooperate in good faith with the FTC and appear at

such places and at such times as the FTC shall reasonably request for interviews, conferences,

pretrial discovery, review of documents, and for other matters as may be reasonably requested by

the FTC. If requested in writing by the FTC, Pukke shall appear and provide testimony under

oath in any trial, without the service of a subpoena. Cooperation by Pukke shall not require

Pukke to waive his constitutional right against self-incrimination and right to counsel.

## IX. RECEIVERSHIP PROVISIONS

**IT IS FURTHER ORDERED** that Robb Evans & Associates LLP is appointed as

Permanent Receiver ("Receiver"), with the full power of an equity receiver over all the

Receivership Property, with directions and authority to accomplish the following:

A.    Within three (3) business days of entry of this Order, release to Pukke from funds

held in constructive trust, as payment for Pukke's living expenses incurred since

April 20, 2005, ONE HUNDRED TWENTY-FIVE THOUSAND DOLLARS

($125,000). The Receiver shall release no further funds held in constructive trust

for the payment of Pukke's living expenses;

B.     Upon Pukke's execution of this agreement and with this Court's approval,

withdraw any freeze on Pukke's existing personal credit cards so that Pukke may

use such credit cards; *provided however*, that Pukke, not the Receivership, shall

be obligated to pay any and all debts incurred thereafter on Pukke's credit cards;

*provided further* that Pukke's use of said credit cards shall be in accordance with

the Bankruptcy Code and applicable Bankruptcy rules;

C.     Upon court order, entered in this action or in the Pukke Bankruptcy Case after

notice to parties in interest, release from funds held in constructive trust TWO

HUNDRED TWENTY-TWO THOUSAND DOLLARS ($222,000) to the Jones

Day law firm in payment of Pukke's attorneys fees and costs logged by the Jones

Day law firm in defending this action through December 29, 2005. Neither the

FTC nor the Receiver shall object to this payment or contest or seek disgorgement

of payments previously received by the Jones Day law firm in connection with

this action. In addition, upon court order, entered in this action or in the Pukke

Bankruptcy Case after notice to parties in interest, the Receiver shall release from

funds held in constructive trust up to an additional SEVENTY-EIGHT

THOUSAND DOLLARS ($78,000) for the payment of attorneys fees or other

costs of administration in the Pukke Bankruptcy Case. In no event shall any

monies released pursuant to this Section IX.C. revert to Pukke personally. Except

as provided in this Section, the Receiver shall release no further funds to

Defendants for any reason. Nothing in this Section mitigates or contravenes

Defendants' stipulation and this Court's finding that (1) any and all funds and assets that comprise Receivership Property were derived from payments by consumers as an alleged consequence of the acts and practices alleged in the FTC's complaint; (2) Defendants do not have a legitimate claim to those funds; and (3) any and all funds paid pursuant to this Order are held in constructive trust for consumers;

D.    The Receiver and the FTC shall not seek disgorgement or otherwise contest payments previously made to the law firm of Collier Shannon Scott for attorneys fees and costs in connection with its defense of this matter, *provided that* Collier Shannon Scott, within three (3) business days of entry of this Order, withdraws and abandons any claim in the Pukke Bankruptcy Case for outstanding, unpaid attorneys fees and costs;

E.    In attempting to sell and liquidate a lot of real property constituting Receivership Property located in Centerpoint, New York, the Receiver shall consider any offer received by Pukke's father, Janis Pukke, to purchase said property, and allow Janis Pukke the right of first refusal to purchase the property at fair market value; *provided however,* the Receiver may put the property up for sale on the open market and consider any offers received in determining the fair market value of the property, and may sell the property to a bidder with a higher or better offer if Janis Pukke declines to match or exceed all material terms of the offer; *provided further* that the Receiver may take all steps necessary, including the taking of Janis Pukke's deposition, to assure itself that any funds to be used by Janis Pukke

to purchase the property do not constitute Receivership Property, and may refuse
to sell the property to Janis Pukke if any such funds constitute Receivership
Property;

F.   Maintain full control of the Receivership Property;

G.   Maintain custody, control, and possession of all Assets, including the funds,
property, premises, accounts, mail and other assets constituting Receivership
Property, wherever situated, the income and profits therefrom, and all sums of
money now or hereafter due or owing to the Receivership, with full power to:
collect, receive, and take possession of all Assets, including goods, chattels,
rights, credits, monies, effects, lands, leases, books and records, work papers, and
records of accounts, including computer-maintained information, contracts,
financial records, monies on hand in banks and other financial institutions, and
other papers and documents of the Receivership and customers of the
Receivership whose interest are now held by or under the direction, possession,
custody, or control of the Receivership;

H.   Continue performing all reasonable efforts to determine the nature, location, and
value of all Receivership Property;

I.   Engage and employ, with the approval of the Court, accountants and money
managers ("Retained Professionals"). The Receiver may employ without the
approval of the Court other individuals or entities that the Receiver deems
necessary to assist it in its duties in the ordinary course of the Receivership's
business, including, but not limited to, foreign attorneys and accountants, realtors,

appraisers and auctioneers ("Ordinary Course Professionals and Vendors"). The Receiver may compensate the Ordinary Course Professionals and Vendors in the ordinary course but, may, in its discretion, seek the approval of the Court in advance of approving payments to such persons. The Retained Professionals and counsel of record for the Receiver may only be compensated pursuant to order of the Court;

J.     Take such action as the Receiver deems appropriate to prevent the dissipation or concealment of any Assets constituting Receivership Property and otherwise preserve any such Assets;

K.     Liquidate Assets constituting Receivership Property in accordance with the terms of this Order or any prior or subsequent order of this Court; and to transfer Receivership Property to storage facilities, cancel leases, and reject and enter contracts;

L.     Oversee the operations of any and all businesses owned or controlled by Defendants that otherwise constitute Receivership Property;

M.     Bring such legal actions based on law or equity in any state, federal, or foreign court as it deems necessary or appropriate in discharging its duties as Receiver relating to the location, marshaling, and management of Assets constituting Receivership Property;

N.     Immediately enforce the monetary judgment set forth in Section III of this Order by taking all necessary or appropriate post-judgment collection steps, including but not limited to obtaining and levying writs of execution and creating, perfecting

and enforcing judgment liens on any real or personal property of the Defendants
that constitutes Receivership Property;

O.     After all Assets that constitute Receivership Property have been liquidated, the
Receiver shall turn over no more than THIRTY-FIVE MILLION ($35,000,000)
from Net Monies to the FTC in accordance with Section III of this Order.
Notwithstanding that such monies represent funds held in constructive trust for
consumers, the Receiver shall turn over any monies exceeding $35,000,000 to the
Pukke Bankruptcy Estate for distribution to creditors in accordance with the
priorities of the Bankruptcy Code. The FTC reserves the right to request that the
Court order the Receiver to distribute funds on an interim basis to the FTC prior
to winding up liquidation of the Receivership Property; and

P.     The Receiver shall pay all taxes and other approved expenses from Receivership
Property and provide a final accounting (1) within thirty (30) days after the
Receiver winds up liquidation and distribution of the Receivership Property or
(2) upon Court order at the request of the FTC.

**IT IS FURTHER ORDERED** that, to the extent they are not inconsistent with this Order, all
powers granted to the Receiver pursuant to this Court's order of April 20, 2005, shall remain in
full force and effect.

## X. COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and those he employs are entitled to
reasonable compensation for the performance of their duties pursuant to this Order and for the
costs of actual out-of-pocket expenses incurred by them, from the Assets constituting

Receivership Property. The Receiver and the Retained Professionals shall apply to the Court for such compensation and expense.

## XI.  COOPERATION WITH RECEIVER

**IT IS FURTHER ORDERED** that the undersigned shall cooperate fully with the Receiver in: (A)assisting the Receiver in defending any and all actions or claims brought against the Receiver or the Receivership Property by other persons or entities; (B) executing any documents necessary to transfer assets or ownership interest to the Receiver pursuant to the terms of this Order; and (C) refraining from any act that would interfere or impede the Receiver in the execution of the performance of his duties.  Pukke shall cooperate in good faith with the Receiver and appear at such places and at such times as the Receiver shall reasonably request for deposition testimony, interviews, conferences, review of documents, and for other matters as may be reasonably requested by the Receiver, without the service of a subpoena.  Cooperation by Pukke shall not require Pukke to waive his constitutional right against self-incrimination, but Pukke agrees that he will not assert this right with respect to his Assets and the Receiver's attempts to locate, marshal, and liquidate Receivership Property.

## XII.  MAINTENANCE OF ASSET FREEZE

**IT IS FURTHER ORDERED** that, except as provided herein, the freeze of the Assets by the Court's order dated April 20, 2005 shall remain in effect, except as necessary for the Receiver to liquidate all Receivership Property, until the Receiver concludes all activities required to wind up the Receivership.  *Provided however*, that nothing in this Order shall (1) prohibit Pukke from seeking gainful employment in accordance with Sections I and II of this Order; or (2) prohibit Pukke from using income earned through such employment, money

released for his living expenses pursuant to Section IX of this Order, or funds given to Pukke by

his friends and family members, so long as such funds did not derive or originate from

Receivership Property, directly or indirectly, in whole or in part.

### XIII. ACKNOWLEDGMENT OF RECEIPT OF ORDER

**IT IS FURTHER ORDERED** that Defendants, within five (5) business days after

receipt of this Order as entered by the Court, each must submit to the Commission a truthful

sworn statement acknowledging receipt of this Order, in the form set forth in Attachment A to

this Order.

### XIV. DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry

of this Order, Defendants shall deliver copies of the Order as directed below:

A. DebtWorks shall deliver a copy of this Order to all of its principals, officers,

directors, and managers. DebtWorks shall also deliver copies of this Order to all

of its employees, agents, and representatives who engage in conduct related to the

subject matter of the Order. For current personnel, delivery shall be within five

(5) days of service of this Order upon DebtWorks. For new personnel, delivery

shall occur prior to them assuming their responsibilities.

B. For any business that Pukke controls, directly or indirectly, or in which Pukke has

a majority ownership interest, Pukke shall deliver a copy of this Order to all

principals, officers, directors, and managers of that business. Pukke shall also

deliver copies of this Order to all employees, agents, and representatives of that

business who engage in conduct related to the subject matter of Sections I and II

of the Order. For current personnel, delivery shall be within five (5) days of

service of this Order upon Pukke. New personnel shall be given copies of this

Order at least one (1) business day before they start work.

C.    For any business where Pukke is not a controlling person of the business but

otherwise engages in conduct related to the subject matter of Sections I and II of

the Order, Pukke shall deliver a copy of this Order to all principals and managers

of such business before engaging in such conduct.

D.    Defendants shall secure a signed and dated statement acknowledging receipt of

the Order, within thirty (30) days of delivery, from all persons receiving a copy of

the Order pursuant to this Section.

## XV.   RECORD KEEPING PROVISIONS

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry

of this Order, in connection with the marketing, providing, or assisting in the marketing or

providing of credit counseling, credit education, or debt management or in the telemarketing of

any good or service, Defendants and their agents, employees, officers, corporations, successors,

and assigns, and those persons in active concert or participation with them who receive actual

notice of this Order by personal service or otherwise, are hereby restrained and enjoined from

failing to create and retain the following records:

A.    Accounting records that reflect the cost of goods or services sold, revenues

generated, and the disbursement of such revenues;

B.    Personnel records accurately reflecting: the name, address, and telephone number

of each person employed in any capacity by such business, including as an

independent contractor; that person's job title or position; the date upon which the

person commenced work; and the date and reason for the person's termination, if

applicable;

C.    Customer files containing the names, addresses, phone numbers, dollar amounts

paid, quantity of items or services purchased, and description of items or services

purchased, to the extent such information is obtained in the ordinary course of

business;

D.    Complaints and refund requests (whether received directly, indirectly, or through

any third party) and any responses to those complaints or requests;

E.    Copies of all sales scripts, training materials, advertisements, or other marketing

materials; and

F.    All records and documents necessary to demonstrate full compliance with each

provision of this Order, including but not limited to, copies of acknowledgments

of receipt of this Order, required by Section XIII and XIV of this Order, and all

reports submitted to the FTC pursuant to Section XVI of this Order.

## XVI.   COMPLIANCE REPORTING BY DEFENDANTS

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this

Order may be monitored:

A.    For a period of five (5) years from the date of entry of this Order,

(1)    Pukke shall notify the Commission of the following:

(a)    Any changes in residence, mailing addresses, and telephone

numbers, within ten (10) days of the date of such change;

    (b)    Any changes in employment status (including self-employment) of Pukke, and any change in the ownership of Pukke in any business entity, within ten (10) days of the date of such change. Such notice shall include the name and address of each business that Pukke is affiliated with, employed by, creates or forms, or performs services for; a statement of the nature of the business; and a statement of Pukke's duties and responsibilities in connection with the business or employment; and

    (c)    Any changes in Pukke's name or use of any aliases or fictitious names; and

(2)    Defendants shall notify the Commission of any changes in corporate structure of DebtWorks or any business entity that Pukke directly or indirectly control(s), or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor entity; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of a bankruptcy petition; or a change in the corporate name or address, at least thirty (30) days prior to such change, *provided* that, with respect to any proposed change in the corporation about which the Defendants learn less than thirty (30) days prior to the date such action is to take place, Defendants shall notify the Commission

Page 28 of 35

as soon as is practicable after obtaining such knowledge.

B.     One hundred eighty (180) days after the date of entry of this Order, Defendants

shall each provide a written report to the FTC, sworn to under penalty of perjury,

setting forth in detail the manner and form in which they have complied and are

complying with this Order.  This report shall include, but not be limited to:

(1)     The then-current residence address, mailing addresses, and telephone

numbers of Pukke;

(2)     The then-current employment and business addresses and telephone

numbers of Pukke, a description of the business activities of each such

employer or business, and the title and responsibilities of Pukke, for each

such employer or business;

(3)     A copy of each acknowledgment of receipt of this Order, obtained

pursuant to Section XIII and XIV; and

(4)     Any other changes required to be reported under subparagraph A of this

Section.

C.     For purposes of the compliance reporting and monitoring required by this Order,

the Commission is authorized to communicate directly with Defendants.

## XVII.   COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating

compliance with any provision of this Order,

A.     Within ten (10) days of receipt of written notice from a representative of the

Commission, each Defendant shall submit additional written reports, sworn to

under penalty of perjury; produce documents for inspection and copying; appear

for deposition; and/or provide entry during normal business hours to any business

location in such defendant's possession or direct or indirect control to inspect the

business operation;

B.    In addition, the Commission is authorized to monitor compliance with this Order

by all other lawful means, including but not limited to the following:

(1)    obtaining discovery from any person, without further leave of

court, using the procedures prescribed by Fed. R. Civ. P. 30, 31,

33, 34, 36, and 45;

(2)    posing as consumers and suppliers to Defendants' employees, or

any other entity managed or controlled in whole or in part by

Pukke or DebtWorks, without the necessity of identification or

prior notice; and

C.    Defendants each shall permit representatives of the Commission to interview any

employer, consultant, independent contractor, representative, agent, or employee

who has agreed to such an interview, relating in any way to any conduct subject to

this Order. The person interviewed may have counsel present.

*Provided, however,* that nothing in this Order shall limit the Commission's lawful use of

compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to

obtain any documentary material, tangible things, testimony, or information relevant to unfair or

deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. §

45(a)(1)).

## XVIII. AUTOMATIC STAY

**IT IS FURTHER ORDERED** that, to the extent necessary to effectuate the provisions of this Order, the automatic stay in the Pukke Bankruptcy Case pursuant to 11 U.S.C. § 362 shall be and hereby is terminated as to the FTC and the Receiver.

## XIX. NONINTERFERENCE WITH RECEIVER

**IT IS FURTHER ORDERED** that all clients and vendors of Defendants, creditors and other persons, and all others acting on behalf of any such client, vendor, creditor or other persons, including sheriffs, marshals, other officers, deputies, servants, agents, employees, and attorneys, are stayed from:

A.   Commencing, prosecuting, continuing or enforcing any suit or proceeding against the Receivership Property, except that such actions may be filed to toll any statutes of limitations;

B.   Using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any portion of the Receivership property, wherever situated;

C.   Attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement affecting the Receivership Property;

D.   Doing any act to interfere with the taking control, possession, management, or sale by the Receiver, of any portion of the Receivership Property, or to in any way interfere with or harass the Receiver, or to interfere in any manner with the exclusive jurisdiction of the Court over the Receivership Property.

*Provided, however,* this provision shall not be construed to restrict:

      1.    The commencement or continuation of a criminal action or proceeding;

      2.    The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

      3.    The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

      4.    The continuation of *In re AmeriDebt*, Case No. 04-23649-PM (Bankr. D. Md.), or the commencement and continuation of any suit or proceeding filed by the AmeriDebt Trustee.

## XX. NOTIFICATIONS

**IT IS FURTHER ORDERED** that, for purposes of this Order, Defendants shall, unless otherwise directed by the FTC or its authorized representatives, mail all written notifications to the FTC relating to this Order to:

> Associate Director, Division of Enforcement
> Federal Trade Commission
> 600 Pennsylvania Ave., N.W.
> Washington, D.C. 20580
> Re: <u>FTC v. AmeriDebt, et al.</u>

For purposes of this Order, the FTC and Receiver shall, unless otherwise provided by this Order or otherwise directed by Defendants or their authorized representatives, mail all written notifications to Defendants relating to this Order to:

Page 32 of 35

John B. Williams, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

## XXI. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for all

purposes, including construction, modification and enforcement of this Order.


**IT IS SO ORDERED.**

Dated: ___5/16/06___                    _____
                                        UNITED STATES DISTRICT COURT JUDGE


Page 33 of 35

**STIPULATED AND AGREED TO BY:**

LUCY E. MORRIS
PEDER V.W. MAGEE
ALLISON I. BROWN
JAMIE HINE
Attorneys for Plaintiff, Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Mail Stop NJ-3158
Washington, D.C. 20580
(202) 326-3295 (telephone)
(202) 326-3768 (facsimile)


Local Counsel
JEANNE M. CROUSE - #05329
RAMONA D. ELLIOTT - #05738
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Mail Stop H-485
Washington, D.C. 20580
(202) 326-3312 (telephone)
(202) 326-3799 (facsimile)



By: Andris Pukke, Individually, and as
     President of DebtWorks, Inc.,
     and as Chapter 11 Debtor



By: John D. Williams, Esq.
     Geoffrey S. Irwin, Esq.
Attorneys for Andris Pukke and DebtWorks, Inc.
And Special Counsel for Debtor Andris Pukke
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3678 (telephone)
(202) 626-1700 (facsimile)

*Attachment A: Affidavit for Receipt of Final Order*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. PJM 03-3317 |
| | ) |
| AMERIDEBT, INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

[*Name of defendant*], being duly sworn, hereby states and affirms as follows:

     1.     My name is _____. My current residence address is _____.
I am a citizen of _____ and am over the age of eighteen. I have personal knowledge of the facts set forth in this Affidavit.

     2.     I am a defendant in *Federal Trade Commission v. AmeriDebt, Inc., et al.* Civil No. PJM 03-3317 (United States District Court for the District of Maryland).

     3.     On _____, I received a copy of the Stipulated Order for Permanent Injunction and Final Judgment, which was signed by the Court, and entered by the Court on _____. A true and correct copy of the Order I received is appended to this Affidavit.

     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on _____[*date*], at _____[*city and state*].

                           _____

                           [*Full name of Defendant*]

State of _____, City of _____
     Subscribed and sworn to before me this __ day of _____, 2006.

_____         My Commission Expires:
Notary Public

35